STIER v. IMPERIAL LIFE INS. CO.

(Circuit Court, W. D. Missouri, W. D. June 5, 1893.)

1. INSURANCE AGENCY—RIGHT TO TERMINATE.
The contract right of an insurance agent to commissions on renewal policies does not make his agency an agency coupled with an interest, so as to prevent the company from terminating it at will. Newcomb v. Insurance Co., 51 Fed. 725, distinguished.

2. SAME.
A provision that an agency may be terminated on certain specified grounds does not imply an agreement that it shall exist indefinitely, so long as the agent commits none of the specified delicts. Sewing Machine Co. v. Ewing, 12 Sup. Ct. 94, 141 U. S. 627, applied.

3. SAME—CONTRACT—CONSTRUCTION.
In a contract creating a life insurance agency, a provision which contemplates the taking of insurance according to several distinct classes of policies is not violated by the act of the company in pushing its business in one class to the neglect of another, although the latter is more profitable to the agent.

At Law. Action by George H. Stier against the Imperial Life Insurance Company of Detroit, Mich., to recover damages for breach of contract. By consent of parties the cause was referred to a referee, and is now heard on exceptions by both parties to his report. Defendant's exceptions sustained, and plaintiff's exceptions overruled.

The other facts fully appear in the following statement by PHILIPS, District Judge:

This is an action founded on contract of agency. The defendant, an insurance company, in 1889 employed the plaintiff, by written contract, as agent to solicit policies, stipulating for certain commission on premiums collected, and for certain commission on renewal premiums. Among the classes of policies was what is known as "Natural Premium Policies" and "Level Premium Policies." The principal business done by the company was in the natural premium line. After the plaintiff had acted as such agent for a year or more after the execution of the contract, the company concluded, from experience, that it was more advantageous to its interests to turn its attention more especially to the prosecution of the level premium plan, and so advised the plaintiff, and withdrew its efforts to advance further the natural premium plan. As the latter was more profitable to the agent, he declined to accept the change; and after much correspondence and negotiations the plaintiff withdrew, and took employment in a rival insurance company, and brought this suit, as for a breach of contract, and predicated his damages of what he claims is the customary mode of admeasuring damages on such breach. By consent of the parties the cause was referred to L. E. Wyne, Esq., to take the evidence and make a finding of the facts and damages. To his report, finding for the plaintiff, and assessing his damages at $3,198, both parties have filed exceptions.

Gates & Wallace, for plaintiff.

Karnes, Holmes & Krauthoff, for defendant.

PHILIPS, District Judge, (after stating the facts.)    It is more important than usual, in the consideration of this case, to keep in mind the character of the action and the state of the pleadings.    The action throughout is predicated upon a contract, and proceeds for breaches thereof.    The contract is set out in substance, and it is then averred that the plaintiff kept and performed the same on his part, and that the defendant broke and failed to keep the same. The petition alleges that the contract was to continue in force until the same was terminated by the neglect or refusal on the part of plaintiff to account for moneys belonging to defendant by the terms and conditions of the contract, or until there was dishonesty or noncompliance with the rules and instructions of said contract on the part of the plaintiff.    It is also averred that, if he should fail to furnish to the defendant company an average of $20,000 per month taken and paid for in three consecutive months, the company might cancel said contract without notice; that defendant bound itself to issue policies known as the "Natural Premium Renewal Term Policies," the "Natural Premium Annuity Bonds," "Five-Year Renewable Term Policies," "Ten-Year Renewable Term Policies," and "Monthly Life and Savings Policies;" also, "Participating and Nonparticipating Level Premium Policies," and "Survivor's Endowment Policies,"—and to allow plaintiff on each of said policies a certain compensation set out in the contract.    It is also averred that defendant bound itself to pay plaintiff a renewal commission on adjusted natural premium policies and natural premium yearly renewable term policies, and life and savings policies, for the first year, $1.80, the second, $1.60, and $1.40 the fourth and subsequent years.

The breaches of the contract assigned are that in 1891 the defendant refused and ceased to issue any natural renewable term policies, etc., and refused to permit plaintiff to solicit or take any applications for the policies mentioned in the contract, and made an entire change in the kind of policies issued, and substituted new and different policies therefor, which substituted policies were not so advantageous to plaintiff as those provided for; and afterwards made no effort to collect the renewal premiums on policies issued under applications taken by defendant, but used every means to discourage, and did discourage, parties holding such policies from paying renewal premiums, thereby depriving plaintiff of his commissions, etc.    It is to be observed that it is nowhere averred that defendant discharged the plaintiff from his agency, nor is it averred that the plaintiff secured an average of $20,000 insurance per month for three consecutive months, as provided by the contract.

The answer, after tendering the general issue, avers that the plaintiff discontinued acting under said contract long prior to the institution of the suit, without notice to defendant, and engaged in soliciting insurance for another insurance company, a rival in business to the defendant; and it avers that in the months of May, June, and July, November, and December, 1890, the plaintiff did not procure

and furnish to defendant an average of $20,000 of insurance per month taken and paid for, by reason of which the right accrued to defendant to cancel said contract of agency without notice to plaintiff; that it was under no obligation to plaintiff to make any effort to collect renewal premiums on its policies; and avers that plaintiff voluntarily abandoned the further performance of said contract on his part, and that by mutual consent said contract was annulled and surrendered.

No reply was filed, and no denials made to the new matter thus set up in the answer, and under the Code of Practice these matters stand admitted by the pleadings. If the plaintiff discontinued acting under said contract, and engaged in soliciting insurance for another rival insurance company of the defendant, and "he voluntarily abandoned the further performance of said contract on his part, and by mutual consent said contract was annulled and surrendered," it is not perceived that there is any foundation for the finding of the referee that defendant could not terminate the contract at its pleasure. Nor am I satisfied, as a matter of law, that defendant did not have the power to terminate the agency. In the absence of an agreement of employment for a definite period of time, the agency is one at will, determinable at the pleasure of the principal, unless the agency is coupled with an interest in the subject-matter. This is fundamental. Mechem on Agency (section 204) says:

"The authority of the agent to represent the principal depends upon the will and license of the latter. It is the act of the principal which creates the authority; * * * and unless the agent has acquired, with the authority, an interest in the subject-matter, it is in the principal's interest alone that the authority is to be exercised. * * * It is the general rule of law, therefore, that as between the agent and his principal the authority of the agent may be revoked by the principal at his will at any time, with or without giving reason therefor, except in those cases where the authority is coupled with a sufficient interest in the agent; and this is true, even though the authority be in express terms declared to be exclusive or irrevocable. But, though the principal has the power thus to revoke the authority, he may subject himself to a claim for damages if he exercises it contrary to his express or implied agreement in the matter."

Chief Justice Marshall, in Hunt v. Rousmanier, 8 Wheat. 203, with characteristic aptness defines a power coupled with an interest. He says:

"What is meant by the expression 'a power coupled with an interest?' Is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of the power? We hold it to be clear that the interest which can protect a power * * * must be an interest in the thing itself. In other words, the power must be ingrafted on an estate in the thing. The words themselves seem to import this meaning. A power coupled with an interest is a power which accompanies or is connected with an interest. The power and the interest are united in the same person. But, if we are to understand, by the word 'interest,' an interest in that which is to be produced by the exercise of the power, then they are never united."

Clearly, therefore, the plaintiff had no such interest in the subject-matter of the contract as would take away the customary option of the principal to terminate the agency. But it is claimed by the

plaintiff, on account of article 18 of the contract in question, that the implication was that the power of dismissal is denied, except for the causes therein specified. This article is as follows:

"This contract may be terminated upon the neglect or refusal of the said George H. Stier to account for all moneys belonging to the company according to rule 7, or for dishonesty, or for noncompliance with any of the foregoing rules and instructions."

The case of Newcomb against this same company (51 Fed. 725) is relied upon in support of this construction. I should feel great embarrassment to oppose my unsupported opinion against any considerate conclusion reached by the learned judge who delivered that opinion. It is to be kept in mind, to a proper understanding of the Newcomb Case, that the action there was for a quantum meruit, and that the facts alleged were in many respects quite different from these under consideration, and the questions passed upon arose upon demurrer to the petition.

I am unable to perceive that the provision that the contract might be terminated upon certain specified grounds enforces the conclusion that it was intended thereby to prolong the existence of the agency indefinitely, or so long as the agent did none of the specified delicts. A not dissimilar question arose in Sewing Machine Co. v. Ewing, 141 U. S. 627, 12 Sup. Ct. 94, where it was held that an agency contract containing the provision that a "violation of the spirit of this agreement shall be sufficient cause for its abrogation" does not imply that it could only be abrogated for sufficient cause. Mr. Justice Harlan said of this, (page 636, 141 U. S., and page 97, 12 Sup. Ct.:)

"This clause, it may be suggested, was entirely unnecessary if the parties retained the right to abrogate the contract after 1875 at pleasure, and implies that it could be abrogated only for sufficient cause, of which, in case of suit, the jury, under the guidance of the court as to the law, must judge, in the light of all the circumstances. We cannot concur in this view. The clause referred to is not equivalent to a specific provision declaring affirmatively that the contract should continue in force for a given number of years, or without a limit as to time, unless abrogated by one or the other party for sufficient cause. It was inserted by way of caution, to indicate that the parties were bound to observe equally the spirit and letter of the agreement while it was in force."

It seems to me that the proper meaning of article 18 is that, for any of the designated derelicts, the right arose absolutely to the principal to terminate the contract without any liability, leaving the right untouched to exercise the power of discontinuance subject to a liability under a quantum meruit action. The general rule of law is that such contracts are revocable at pleasure "unless the power to revoke is restrained by express stipulation." Mechem, Ag. §§ 209, 210. This rule is aptly put in Coffin v. Landis, 46 Pa. St. 431, 432. The court say:

"The true question is, what was the contract? To what did the parties bind each other? We are not at liberty to make contracts for them, or to add any stipulation which they have not seen fit to incorporate. We cannot give a mere expectation the sanction or binding force of a covenant. * * * There is nothing said in regard to the time during which the agreement should continue, and nothing in its language to define the

duration of the service of plaintiff or his employment by the defendant. This the contracting parties appear to have left out of consideration, or at least failed to make it a subject of covenant obligation. It may be that neither was willing to bind himself for any definite period. * * * It is evident, then, that were we so to construe the agreement as to hold it obligatory upon the one party to employ, and upon the other to serve, during any period, we should be in danger of imposing liabilities which both parties absolutely avoided assuming. And, if it be admitted that neither of the parties contemplated a severance of the relation affirmed by the contract at the will of the other party, it does not follow that we are at liberty to treat the agreement as continuing a covenant against him. That would be to make an expectation of results equivalent to a binding acknowledgment that they should follow."

The case of Insurance Co. v. Williams, 91 N. C. 69, pertinently illustrates the application of this rule. Williams was appointed agent to solicit insurance. On first-year payments he was to receive a given per cent., and on renewals a given per cent. The agent prosecuted his agency to a considerable extent, when the company, unable to successfully conduct its business, sold out and assigned many policies to another insurance company, and renewals were effected, through another agency, on some of the policies taken by Williams. For these renewals he sought to recover compensation. Although it might have been there, as in the case here, that the agent was induced to accept the agency in reliance on the expectancy of profits from the renewals, the court held that the company, in the absence of any express provision to the contrary in the contract, had the right to terminate the contract in the manner it did; that the agent had no such interest associated with the business as entitled him to a continuance of the agreement against the will of the principal. "The right to compensation is associated with a continuance of services, and the compensation is the agreed measure of their value. * * * Although renewals are the consequence of the original contract of insurance, and in this particular beneficial to the company, yet the full compensation given, and accepted for this service is the twenty-five per centum on the sum received, provided in the contract which creates the agency and regulates its terms." While the contract here provides that the agent may be entitled to commission on renewal premiums, notwithstanding the termination of the agency for any cause save dishonesty, yet it is on the express condition that the agent has secured $1,000,-000 of policies in force; but there is no claim made that he had secured this amount. The principal difference between the case supra and this is that Williams sought to recover his commission on cases actually renewed, but by another agent, while this plaintiff seeks to recover damages on the theory that his interest would have been equal to $1,200 a year for three years, had the company diligently striven to effect such renewals. It is a difference, it seems to me, without a legal distinction.

There must be, in the the absence of a clear provision to the contrary, the element of mutuality in such a contract. If, as against the principal, the agent had the right to insist on a continuation of the agency so long as he did none of the prescribed acts in article 18, the correlative right of the principal must obtain to

hold the agent to perpetual service, or so long as he was faithful; and thus it would result that, nolens volens, the employment could be made perpetual. It is quite evident from the second paragraph of the opinion in the Newcomb Case, supra, that the learned judge had in mind the recognized distinction between the reserved power to discharge and the right and wrong of a discharge, where the remedy is not in an action ex contractu for the discharge, but a quantum meruit action predicated upon its injurious exercise. In the latter instance the suit is not founded on the breach of the contract, as such, but is an action of assumpsit for a quantum meruit, in which the contract may be put in evidence, and will control the maximum of recovery. Mansur v. Botts, 80 Mo. 654, 655, and citations. Keeping this distinction in view, the vice is apparent in the finding of the referee that the defendant broke its contract with the plaintiff in not permitting him to continue the prosecution of his work in taking insurance on the natural premium plan, or in discouraging the prosecution of that system by its determination to specially prosecute the level premium policies. Is there any provision or stipulation in the contract which bound the defendant to adhere exclusively to the natural premium plan, which in contemplation of law would constitute a breach of contract, if defendant should at any time thereafter determine upon a more special prosecution of the level premium plan? I am wholly unable to find any such provision in terms.

The power of attorney to the plaintiff simply appoints the plaintiff agent for the defendant company in a designated territory, under instructions, conditions, and rules governing agents; and it distinctly appears on the face of the petition, as it does on the back of the contract in question, that the commissions which the plaintiff was to receive applied not only to natural premium policies, but also to nonparticipating level premium policies, participating level premium policies, and to survivors' endowment policies. The fact that one class of policies was or was not more profitable to the agent than another, or that it may have been in the contemplation of either that the business of defendant was to be mainly confined to the natural premium policies, cannot, it seems to me, affect the question as to whether or not by the contract the defendant obligated itself to so confine its business. If it did not so covenant in the written agreement, no damage can be predicated of a breach of contract in this respect. Carried to its logical conclusion, the contention of plaintiff would have entitled him to claim damages had the defendant, at any time after executing the contract, concluded that the prosecution of the level premium plan was more advantageous, and, without abandoning the natural premium plan, given more especial attention to its own preference. And it is just as inferable, by implication, that had the plaintiff, after entering upon his agency, discovered that the level premium plan was more beneficial to him than the natural premium, he could as well claim that the contract forbade the defendant to do anything which would lessen his profits under the level plan, as to make his present claim, in so far as anything appearing on the face of the contract itself.

When we turn from the contract to the evidence in the case, the cause of the plaintiff finds less support. As already stated, it stands admitted by the pleadings that the plaintiff, without being discharged by the defendant, himself broke the contract by voluntarily entering the service of an antagonistic insurance company; and it appears from the evidence that he actually entered into a written contract of agency with the Provident Savings Life Insurance Society, by which he stipulated for commissions "upon policies of the above forms secured by said Stier upon the lives of persons whom he has heretofore insured in the Imperial Life Insurance Company of Detroit," which contract bears date July 28, 1891. On August 20, 1891, the president of the defendant company wrote to the plaintiff as follows: "We are informed that you are now doing business for the Provident Savings Life, which of course terminates your contract with this company, and we desire you to forward all supplies to us to this office at once,"—which indicates that the plaintiff had taken service there without terminating his agency with this defendant, and without its knowledge or consent. While it is to be conceded that prior to plaintiff's thus taking service in the employ of another company this defendant had signified to him its desire and purpose to conduct its business upon the level premium plan, yet it is not true that the defendant company, as is alleged in the petition, refused to permit the plaintiff to proceed further in the prosecution of his agency upon the natural premium plan. The evidence shows that as late as June 30, 1891, after an effort had been made to agree upon another contract between the parties, the president of the defendant wrote to the plaintiff as follows:

"If this contract [the new one] is not satisfactory to you, we stand ready to carry out the old one; and, if you feel that you prefer the old plans to the new ones, send us in your old line rate books, and we will forward you supply of the old ones, so there will be no grounds of dissatisfaction of any kind on that point. However, I am satisfied it would be by far the best for all parties concerned for you to take up the new plan."

The utmost that the referee could find against the defendant on this branch of the case is that, owing to the desire and purpose of the defendant to turn its business in the direction of the level premium plan, the plaintiff did not receive the support and co-operation of the defendant required under the natural premium plan. But as it cannot be maintained, in my opinion, that the contract restrained the defendant from directing its own business in a channel which it conceived to be most profitable to it, and such channel being one provided for in the contract itself, it would seem to follow that no action for damages is predicable upon the contract for a breach in so endeavoring to direct and control its business. It is true, the petition alleges that the defendant broke its contract with the plaintiff in failing to furnish him with the requisite supplies and blanks, etc., yet, as no damages have been found or reported as arising therefrom, this may be treated as damnum absque injuria.

In view of the conclusion thus reached, it is not needful to be decided whether or not, under article 17 of the contract, any dam-

age can be predicated of the loss of commissions on renewal premiums, for the reason that it does not appear that the plaintiff had secured $1,000,000 of insurance in force. The referee made his assessment of damages against the defendant based solely upon prospective earnings of the plaintiff on commissions of renewal premiums for three years, taking as a basis a general average of his earnings prior to the interruption of the agency. Serious criticism is made of this theory of assessment; but, in view of the pleadings and palpable facts of this case, my conclusion is that defendant's exceptions to the referee's report are well taken, and the same are sustained, and plaintiff's exceptions thereto are overruled.