MACGREGOR v. UNION LIFE INS. CO. OF OMAHA, NEB.

(Circuit Court of Appeals, Eighth Circuit. February 16, 1903.)

No. 1,663.

**1. AGENCY—BREACH OF CONTRACT CREATING.**

A life insurance company which abandons its business by transferring it to another company, and thus disables itself from carrying out a contract by which it appointed a general agent or manager, and refuses to permit him to continue to act in such capacity, is liable for damages for breach of such contract, where, either by its terms or by implication, the agency was to continue for a certain term.

**2. SAME—CONSTRUCTION OF CONTRACT CREATING—IMPLIED TERM OF CONTINUANCE.**

By a written contract, plaintiff was appointed manager for defendant, a life insurance company, for a city and surrounding territory. The contract contained no specific statement of the term during which the agency should continue, but it required plaintiff to provide and maintain a suitable office at his own expense, and provided that he should be compensated by commissions on the business secured, according to a schedule therein, "during the term provided for in this contract," which commissions should be "subject to revision at the end of five years." It required plaintiff to solicit only good business, which would be a credit to both agent and the company, and which, in his judgment, would continue in force and pay premiums after the first year, and he was to receive a commission on such premiums. It provided that defendant might terminate the contract in case plaintiff should procure no applications during a period of two consecutive months, except in case of temporary sickness or accident, or for neglect of business on his part. There was also a provision with respect to the rights of the parties when the contract should be terminated "as herein otherwise provided," which gave plaintiff the right to a commission during his lifetime on renewal premiums if he should retire from the service at any time after three years' continuous service, unless he entered the service of another company. *Held*, that it was evidently the intention of the parties that the agency should be of a permanent character, and to fix a term for its continuance, and that there was an implied agreement, arising from the express provisions of the contract, that it should continue in force for a term of five years, which rendered it mutually obligatory during such term, unless sooner terminated by mutual consent, or in one of the ways provided for therein.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Missouri.

Charles F. Macgregor, the plaintiff in error, brought an action against the Union Life Insurance Company of Omaha, Neb., the defendant in error, to recover damages for the breach of a contract, which was as follows:

"This agreement, made and entered into, by and between the Union Life Insurance Company, of Omaha, Nebraska, party of the first part, and C. F. Macgregor, of the city of Kansas City, and the state of Missouri, as party of the second part, witnesseth:

"The said party of the first part, for and in consideration of the covenants and agreements hereinafter contained, which are to be kept and performed on the part of the said party of the second part, has this day appointed, and does hereby appoint, the said party of the second part its manager, within and for the city of Kansas City, and the counties of Jackson, Cass, Lafayette, Ray, Clay, Platte, Buchanan, Clinton, Caldwell and such other counties as may be hereafter assigned to this agency, with the authority to solicit, procure and forward to the said party of the first part, for its approval and ac-

ceptance, applications for insurance upon the lives of persons under the rules, regulations and terms prescribed by the said party of the first part.

"And the said party of the first part, agrees to allow and to pay to the said party of the second part, for the services to be rendered under this agreement, subject to revision at the end of five years, and to conditions stated in paragraph number three, of the following page of this contract, a commission to be computed upon each premium paid for the first year's risk, which shall be paid to and received by the said party of the first part, in cash, upon all policies of insurance issued by the said party of the first part, during the term provided for in this contract, upon applications obtained by the said party of the second part, at the rates printed in the company's current rate book, according to the following:

## "Schedule of Commissions.

"Tables No. one and seven, ten per cent.

"Tables numbers two, three, four, eight, nine, and thirteen, eighty per cent.

"Tables numbers five, six (te), eleven, twelve, sixteen and seventeen, one hundred per cent.

"Table number fourteen, all of the first twenty-five dollars and five per cent. on the balance.

"Table number fifteen, the same rate of commissions as allowed on participating policies of the same character, less ten per cent.

"The said party of the second part, shall have a collection interest of seven and one-half per cent. of the second and each subsequent premium paid to and received by said party of the first part, in cash, on business written by him, and agents appointed by him, under this agreement, and the same shall apply to interest payments paid to the said party of the first part on single premium business. The said second party shall also have a commission of five per cent. on all sums paid in cash to said first party to reduce single premium loans. Commissions on all premiums collected and paid over as aforesaid upon policies issued upon applications other than as above described, and shall be determined by said company.

"The party of the first part shall supply its usual printed matter and stationery for the conduct of the business.

"In consideration of the covenants and agreements herein contained on the part of the party of the first part, the said party of the second part further covenants and agrees:

"I. That the payment of the commissions herein enumerated shall be full compensation for his services and during the continuance of this agreement he will send to the company only such business as in his best judgment will continue in force and pay premiums after the first year, it being the intent of this agreement to place on the books of the company only good business and that shall be a credit to both agent and company after the first year.

"II. That he will immediately enter upon the performance of the duties herein described, and continuously use his best endeavors to organize his field, secure good agents, and procure applications for insurance for said company. That if he shall procure no applications for insurance for said company during a period of two consecutive months, except in case of temporary sickness or accident, this contract may be declared void by said company without notice to said second party.

"III. That he will maintain a suitable office in Kansas City, and shall pay all the expenses of his agency, including office rent, clerk hire, telephone charges, office fixtures or furniture, his own expense of travel, and all expenses of his subordinates. He will also remit to the company with each monthly report, three dollars for each application forwarded to the company by him or his subordinates, during the month covered by his report, whether the applications are approved by the company or rejected.

"IV. That he will not create or assume to create any debt or obligation in the name of or purporting to be the debt of or obligation of said company, or otherwise impair the credit, standing and good name of said company.

"V. That on or before the tenth day of each month, he will make and send to the home office of the company a report containing a true account of all collections made, and all business entrusted to his care, also a statement of

expenses incurred and all other items called for in the report blank furnished by the company; he shall send with his monthly report vouchers for rent paid, and all office and field expenses, also for commissions, less amount covered by expense vouchers. He shall remit all cash collected less commissions provided for in this contract.

"VI. That he will send to the company with his monthly report one-half of the five year term premium, as now given in table No. seventeen of· the company's current rate book, for each one thousand dollars of insurance written in excess of any five thousand dollars of insurance carried by the company on any one life.

"VII. That he will send to the home office on or before the tenth day of each month or with his monthly report all policies, premium receipts or collections of any kind, that are thirty days' past due and have not been delivered or settled for.

"VIII. That in case of his neglect or refusal to send said account or to make the remittance aforesaid, or when called upon or demanded by the company to make good any deficiencies, or whenever, in consequence of his neglect to attend to the collection of renewals, or of conduct prejudicial to the best interests of the company, it shall appear to be necessary to do so, the company shall have the right to immediately terminate this agreement.

"IX. That all books, records, papers, vouchers, and other documents in his hands pertaining to the business of said company, are the property of said company, and at all times subject to the inspection of said company, or its authorized representative, and he will immediately return to said company or its legally authorized agents any and all books and supplies above described, at the termination of this contract, or whenever requested to do so by said company.

"X. That he will furnish and maintain with said company a sufficient and satisfactory bond for the faithful performance of all agreements of this contract, and the duties pertaining to this agency, whenever requested to do so. And it is hereby mutually agreed by the parties hereto that when this contract shall be terminated as herein otherwise provided, therefrom all further rights and obligations hereunder shall cease excepting that if the said second party shall retire from the service of the said first part—, at any time, after three years continuous service under this contract, he shall, providing he does not enter the service of another life insurance company, be paid, during his lifetime, a renewal interest of five per cent. of cash· premium receipts from all business written under this agreement.

"This contract shall date from March first, 1898.

"Signed this twentieth day of May, A. D. 1898.

"[Signed]       Union Life Ins. Co. of Omaha,
           "By Euclid Martin, President.

"Attest. A. L. Wigton, Secretary.
 "C. F. Macgregor."

After setting out the aforesaid contract in his complaint, the plaintiff alleged, in substance, that, acting under the contract, he had procured insurance on 108 lives, to the aggregate amount of $421,000, which insurance yielded in annual premiums the sum of $13,974.64; that on May 8, 1899, the defendant company entered into a contract with the Royal Union Mutual Life Insurance Company of Des Moines, Iowa, whereby it engaged to cease to solicit new insurance, and to transfer its good will and agency force to the last-named company, the latter company agreeing to reinsure all of the risks of the defendant company in consideration of its being paid "the full net four per cent. actuaries term rate for the age attained upon all policies hereby reinsured," and that the reinsuring company should proceed to issue supplemental policies by which it should assume all the liabilities of the defendant company on the outstanding risks thus reinsured. Plaintiff alleged that in accordance with this agreement the defendant company had discontinued its business as a life insurance company, and failed and refused to permit plaintiff further to prosecute his duties as defendant's manager according to the terms of his contract; that the defendant by the last-mentioned contract had divested itself of the power to keep and perform its part of the contract entered into with the plaintiff; that, by reason of the defendant's failure and refusal to

permit the plaintiff to further prosecute his duties under his contract, he had lost and would lose his earnings under the same, and had lost and would lose his collection interest upon premiums paid and thereafter to be paid as provided for in his contract, and had lost and would lose his collection interest in interest payments as provided for in said contract, and had been damaged in the sum of $20,000, for which he prayed judgment.

The defendant below demurred to the complaint for the reason that it did not state facts sufficient to constitute a cause of action. This demurrer was sustained, whereupon the plaintiff below declined to plead further, and a judgment was entered that the plaintiff take nothing by reason of his action, and that the defendant go hence discharged. To reverse the judgment, a writ of error has been prosecuted to this court.

Theo. L. Carns, for plaintiff in error.

O. H. Dean (W. D. McLeod, Hale Holden, and N. M. Hubbard, Jr., on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The complaint to which the demurrer was addressed contains allegations that are sufficient to show that the contract in suit had been broken by the defendant company when this action was commenced, unless the agency contract was of such a nature that the agency could be terminated at the pleasure of the company. The doctrine is elementary that when one of two contracting parties disables himself from performing the stipulations by him to be performed, or refuses to permit the opposite party to execute the agreement according to its tenor, he is guilty of a breach of contract, and may be sued therefor. Wolf v. Marsh, 54 Cal. 228; Smith v. Jordan, 13 Minn. 264 (Gil. 246), 97 Am. Dec. 232; Webster v. Coffin, 14 Mass. 196; Bishop on Contracts, §§ 826, 1426. In this instance the complaint not only alleged that the defendant company, by abandoning its business and transferring it to another, had disabled itself from keeping its engagements with the plaintiff, but it was also averred that it had refused to permit the plaintiff to further act as its solicitor and manager. The important question in the case, therefore, would seem to be whether the defendant company, acting within its rights under the contract, could terminate it without cause, at its mere pleasure, without incurring any liability to the plaintiff, who had agreed to act as its agent and manager.

A contract should always be so construed as to effectuate the intentions of the parties thereto; and, in determining what was their intention, everything within the four corners of the instrument is to be considered, as well as the situation and relations of the parties, and the subject-matter to which the contract relates. A mere glance at the agreement before us, as well as a consideration of the business to which it related, convinces us that it was not the intention of the parties to create an agency of a mere temporary character. One of the contracting parties was an insurance company which desired to build up a permanent and lucrative business in a large city and in a populous district adjacent thereto. To that end, it appointed the plaintiff, who was presumptively an experienced insurance agent, as its

manager at the place in question; agreeing to pay him as compensation for his services not only a commission on initial premiums, but also a commission of 7½ per centum on all subsequent premiums on business solicited by him or any of the agents whom he might appoint, and binding him to send to the company only such business as, in his judgment, would "continue in force and pay premiums after the first year," and to solicit only good business, that would "be a credit to both agent and the company." These circumstances create a strong presumption that, in the contemplation of the parties to the agreement, the agency was to continue for a considerable period, and might last for years. Indeed, it can hardly be supposed that two persons entering into such a business arrangement, and having such objects in view, would intentionally leave either party at liberty to terminate it without cause at his mere pleasure.

Turning to the contract which is quoted above, it will be observed that in one of the opening paragraphs it was provided that the compensation agreed to be paid to the plaintiff should be "subject to revision at the end of five years," while in the same clause it was declared that the compensation specified should be paid "during the term provided for in this contract." In view of this language, it is manifest that the parties to the agreement supposed that they had fixed a period or "term" for the continuance of the agency. It will also be observed that in paragraph 2 of the agreement the defendant company reserved the right to declare the contract at an end if the plaintiff "shall procure no applications for insurance for said company during a period of two consecutive months, except in case of temporary sickness or accident"; also that by paragraph 8 it reserved the right to terminate it for any dereliction of duty, such as a neglect on the part of the plaintiff to attend to the collection of renewals, or if he was guilty of any conduct prejudicial to the interests of the company. These provisions reserving the right to declare the contract void and to terminate it for the reasons last specified were clearly unnecessary if it be true, as now claimed, that the defendant company had the right to put an end to the contract at any time at its mere pleasure. Moreover, provision 10 of the contract, on which some stress was laid in argument, as giving the plaintiff the right to abandon the agency at any time, did not, in our opinion, confer that right, but was only intended to secure to the plaintiff his right to commissions on renewal premiums, provided that the contract was terminated, after the plaintiff had been in service for as much as three years, for any of the causes therein specified.

It is a well-known rule for the construction of contracts that a contract should be interpreted, if possible, so as to give effect to all of its provisions, and not render any of them nugatory or useless; for, when parties insert independent stipulations in an agreement, they are supposed to have some object in view, and to have formulated them for the purpose of securing some right or guarding against some liability which otherwise would not be adequately secured or guarded against. It is also well settled that whatever may be fairly implied from the express provisions of an agreement is as binding and obligatory upon the parties thereto as that which is in terms expressed.

Williams Cooperage Co. v. Scofield, 115 Fed. 119, 123, 53 C. C. A. 23. Applying these rules to the contract in suit, and considering all of its provisions, we are of opinion that the contract created an agency for the term of five years, and that such was the intention of the parties. After the lapse of that period the plaintiff's compensation was to be readjusted, and if the parties failed to. agree on that point the agency would necessarily end; there being no agreement for compensation after that time. If they did reach an agreement, a new contract would necessarily result therefrom; the old one becoming functus officio. It is true that the contract contained other provisions, to which reference has already been made, in virtue of which the agency might be terminated at an earlier day—as, for example, if the plaintiff failed for as much as two months to secure applications for insurance, or was guilty of any of the specified derelictions of duty; but, barring the termination of the contract in these ways, it was to continue, we think, for a period of five years, and in this respect was mutually obligatory. upon the contracting parties.

The views heretofore expressed find support, we think, in the following cases: Thus in Norton. v. Cowell, 65 Md. 359, 4 Atl. 408, 57 Am. Rep. 331, an accepted offer tendering one wages at $100 per month, and containing the further clause, "and if you give me satisfaction at the end of the first year I will increase your salary accordingly," was held to imply an engagement for a year's service. So, also, in Gundlach v. Fischer, 59 Ill. 172, where an agent was employed to sell certain machines, and the principal agreed that, if the agent faithfully performed his duties, he would furnish him such a number of machines as he might be able to sell prior to October 1, 1867, it was held that this imported a definite agreement that the agency should continue until October 1, 1867. And in the case of Smith v. Theobald, 86 Ky. 141, 5 S. W. 394, the court concluded that one who had been employed to come from a neighboring city, where he was manager of a hotel, and assume control of a hotel at Hot Springs, Ark., at a salary of $125 per month and board for himself and family, in view of all of the circumstances, was engaged for a year, although there was no express promise to that effect. See, also, Koehler v. Buhl, 94 Mich. 496, 54 N. W. 157; Danby v. Coutts, L. R. 29 Ch. 500, 515. The general doctrine which is invoked by counsel for the defendant company, that a principal is entitled to revoke the authority of an agent at any time, when there is no express or implied agreement between them that the agent shall be retained for a definite period, is not denied; but in the case in hand we are of opinion, for the reasons already stated, that there was an implied agreement between the contracting parties that the agency here involved should continue for the period of five years unless it was terminated by mutual consent, or in one of the ways provided for in the contract. We conclude, therefore, that the petition stated a cause of action, and that the demurrer thereto ought not to have been sustained.

No question arises upon this record concerning the appropriate measure of damages for the breach complained of, and no opinion need be expressed on that point. Even though the damages for the breach shall prove to be nominal,. the petition states a cause of action, and

whether it does state a cause of action is the sole question presented on the present occasion.

The judgment below is reversed, and the case is remanded for a new trial.

SANBORN, Circuit Judge, dissents.