MOORE et al. v. SECURITY TRUST & LIFE INS. CO.

(Circuit Court of Appeals, Eighth Circuit. March 23, 1909.)

No. 2,793.

1. INSURANCE (§ 85*)—CONTRACT OF AGENCY NOT BROKEN BY REINSURANCE AND ABANDONMENT OF BUSINESS.

A contract by a life insurance company, whereby it turns over its property and business to a rival company and incapacitates itself to continue its insurance business, is not a breach of a contract of appointment of agents which contains no agreement fixing the time such appointment shall continue.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 85.*]

2. INSURANCE (§ 85*)—CONTRACTS WITH AGENTS FOR COMMISSIONS ON FUTURE RENEWAL PREMIUMS NOT BROKEN BY REINSURANCE AND ABANDONMENT OF BUSINESS.

A contract by a life insurance company whereby, at or after the lawful conclusion of the term of the agency, it turns over to a rival company all its business and property and disables itself from collecting future re-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

newal premiums, does not constitute an anticipatory breach of an agreement with its agents that after the termination of the agency commissions will be paid them on such premiums as collected by the company, which will sustain an action for the present worth of the commissions before the renewal premiums have become due or been collected.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 85.*]

**3. PRINCIPAL AND AGENT (§ 33*) — AGENCY PRESUMED TO BE AT WILL UNLESS OTHERWISE STIPULATED.**

The general rule is that a principal may revoke and an agent may renounce the appointment of the latter, in the absence of an agreement that it shall continue for a specific term.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 54; Dec. Dig. § 33.*]

**4. INSURANCE (§ 85*) — CONTRACTS OF AGENCY—RIGHT OF COMPANY TO TERMINATE ITS BUSINESS IMPLIEDLY RESERVED IN.**

The right of an insurance company to manage its business, to determine the term of its continuance, whether or not, and when, if at all, it will reinsure its risks, turn over its business to another company, and cease to carry it on, is vital to its existence, success, and the due exercise of its corporate power, and it is impliedly reserved in contracts of agency which contain no agreements to the contrary.

The exercise of this right and the consequent termination of the agency is no breach of a contract of agency which contains no agreement forbidding or limiting the exercise of this right.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 85.*]

**5. INSURANCE (§ 85*)—PRESUMPTION OF RESERVATION SUPERIOR TO IMPLICATION FROM SPECIFICATION OF CAUSES OF TERMINATION.**

The presumption of the reservation of this right is superior to the implication from the existence of clauses in an agency contract, unnecessary if the agency is at will, specifying causes for its termination.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 85.*]

**6. CONTRACTS (§ 329*) — ANTICIPATORY BREACH—INAPPLICABLE TO AGREEMENTS TO PAY MONEY EXECUTED BY THE PARTIES OF ONE PART.**

The rule that where one party to an agreement disables himself from its performance, or gives notice that he will not fulfill it, the other may maintain an action for damages for the anticipatory breach before the time of performance arrives, applies to mutually executory contracts.

It does not govern actions on bonds, notes, or upon contracts for the payment of money at times specified, which are completely executed by the parties of one part.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1511; Dec. Dig. § 329.*]

Van Devanter, Circuit Judge, dissenting in part.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Kansas.

Robert Stone (Troutman & Stone and D. R. Hite, on the brief), for plaintiffs in error.

Frank Ewing, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and W. H. MUNGER, District Judge.

SANBORN, Circuit Judge. Is an agreement by a life insurance company, whereby it turns over all its business and assets to a rival company and incapacitates itself to continue its insurance business,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a breach of a contract of appointment of agents which contains no stipulation fixing the time the appointment shall continue? Does a contract by a life insurance company whereby, at or after the lawful conclusion of the term of the agency, it turns over to a rival company all its business and assets and disables itself from collecting future renewal premiums upon its policies, constitute an anticipatory breach of an agreement with its agents that after the termination of their agency commissions will be paid on such future premiums as collected by the company, which will sustain an action for the present worth of the future commissions before the renewal premiums have become due or been collected? These are the questions which are presented in this case by a demurrer to the complaint, which the court below sustained. The contract between the defendant insurance company and its agents, the plaintiffs, was in writing, and it took effect on May 15, 1904. By the terms of that agreement the insurance company appointed the plaintiffs its agents in the state of Kansas and promised to pay them certain commissions during the continuance of their agency, and that after the termination of the contract a commission of 7½ per cent. would be paid to them on renewal premiums upon the insurance which they obtained as these premiums were collected by the company. The contract provided that the agreement of agency, with the exception of the stipulation that the commission on the future renewal premiums should be paid after its termination, should cease if the authority of the company to operate in Kansas terminated, if the agents withheld funds, policies, or receipts of the company 30 days after they should have been transmitted to it, or 30 days after they were demanded by the company, and if either party for just and reasonable cause gave 30 days' notice of its termination. It contained no stipulation that the insurance company would continue the appointment of the agents, or that the plaintiffs would continue to serve as agents, for any length of time. There was an agreement in it that the agents should pay all the expenses of conducting the business transacted under the terms of the contract. In September, 1906, the defendant made a contract with the Pittsburg Life & Trust Company whereby it turned over to that company all its business and property and disabled itself from continuing in the business of life insurance and from collecting the future renewal premiums upon insurance secured by the plaintiffs, which insurance amounted to more than $1,000,000, and it notified the plaintiffs of this fact and that the contract of agency was terminated. The present worth of the plaintiffs' commission on the future renewal premiums upon this insurance was $18,792.60, and they had expended $8,370 in the promotion of the defendant's business during the agency in reliance upon reimbursement from its continuance. Upon these alleged facts the plaintiffs demand judgment for $27,162.96.

It is a general and indisputable rule of law that the principal may revoke and the agent may renounce the latter's appointment at will and at any time, without committing any breach of the contract of agency and without incurring any liability for damages. There are exceptions to this rule, as where the agent acquired an interest, not

in the fruits or profits of the thing, but in the thing itself which is the subject-matter of the agency. Hunt v. Rousmanier, 8 Wheat. 175, 203, 5 L. Ed. 589. But the agents acquired no such interest in this case, and it is useless to consider or discuss this or other exceptions that are equally inapplicable. In view of the general rule, which has been stated, parties who intend that their contracts of agency shall exist for definite times embody in their contracts express provisions that they shall continue for specified terms, and the absence of such a provision in a contract of agency raises a strong presumption that it was an agency at will.

Counsel argue that the provisions of this contract that it should terminate (1) 30 days after the agents failed to transmit due or demanded funds, policies, or receipts, (2) when the authority of the company to operate in Kansas should terminate, and (3) for just and reasonable cause on 30 days' notice, show that the parties intended to agree, and, therefore, did contract by implication, that the contract of agency should be permanent. There is persuasive force in this contention; but there are other considerations not less convincing. The basic rule for the ascertainment of the true meaning of a contract is to examine all its terms in the light of the situation of the parties when it was made, and to deduce from them the true intention of those who signed it. This agreement contained stipulations that the agents "shall devote their time and best energies to the service of said company," and "pay all the expenses of conducting the business transacted under the terms of this contract," but no provision that they shall continue to do so during the term of their natural lives or during any other specified time. Did the plaintiffs intend by that contract to undertake through health and sickness, through profitable and unprofitable business, through fortune and misfortune, to pay the expenses of and to devote all their time and energies to the insurance business of the defendant in Kansas during the term of their natural lives and to subject themselves to damages for a failure to do so? The question is susceptible of but one rational answer. They must have intended to reserve their right, at their own free will and without liability for damages, to renounce this agency whenever the unprofitableness of its business, the superior inducements of other business, or occupation or location, or the health or comfort of themselves or their families, should convince them that it was either their duty, their interest, or their pleasure so to do; and if they had renounced the agency at any time for any of these reasons no court could have sustained a judgment against them for a breach of their contract. Their right thus to renounce was impliedly reserved to them in the contract, and the defendant took the chances of their exercise of it when it made the agreement without any stipulation that they should serve it for a definite time.

The defendant was a corporation empowered by the state to conduct the business of life insurance. It was and is common knowledge, of which the parties to this contract could not have been ignorant, that more than 60 per cent. of the companies that embark in that business fail to find it profitable and in a few years either reinsure their risks

and turn over their business to some other company, or become insolvent and abandon their attempt to insure the lives of their policy holders. The right to determine what risks it should accept and what it should reject, what rates it should charge, in what states it should conduct its business, and in what it should not, how long it should continue to insure lives, in view of its present and probable success or failure, and whether it should continue an unprofitable business to the ultimate loss of itself and its policy holders, or reinsure its risks in some other company and prevent greater loss, and generally to determine and carry into effect the business policy of the company, was vital to the due exercise of its corporate powers, to its continued existence, and to its success. Did the company, in view of this fact, intend by this agreement to deprive itself of this right, or to subject its exercise of it to an agreement to accept such applications for insurance as the plaintiffs directed, for the right to direct the acceptance of any is the right to direct the acceptance of all, to conduct such business in Kansas as the agents demanded, and to continue so to do, and to continue to carry on its general business of life insurance, whether profitable or unprofitable, during the entire term of the lives of the defendants, or during any other specific time? The true answer does not seem to be doubtful. It is obvious, from the nature of the company and the surrounding facts, that it intended to reserve to itself the right at its own free will to determine what applications for insurance it should accept and what it should reject, in what states and on what terms it should conduct its insurance business, what premiums it should charge, how long it should carry on its general business, whether or not, and when, if at all, it should turn over its business to another company, reinsure its risks, and cease to do an insurance business, free from all liability to its agents for damages for so doing. This right and its free exercise were as essential to the due exercise of the corporate powers of the defendant as the right of the plaintiffs to be free from lifelong service to it was to their comfort and prosperity, and nothing less than a clear and unequivocal agreement to surrender this right or limit its exercise could convince of such an intention. There was no such agreement. The implication invoked that the contract was not terminable at will, because it contained clauses, unnecessary if it was so terminable, specifying causes for its termination, is too feeble to withstand the compelling force of the presumption that the plaintiffs could not have intended to surrender control of their own business and services for life, and the defendant could not have intended to surrender its right or to limit the exercise of its right to manage, control, continue, or terminate its business of insurance at will. The existence of this right in the defendant and its free and continuous exercise were implied in this contract of agency, and the plaintiffs took the chances of its exercise when they signed the agreement and entered upon their service under it. Willcox & Gibbs Sewing Machine Co. v. Ewing, 141 U. S. 627, 636, 637, 12 Sup. Ct. 94, 35 L. Ed. 882; In re English & Scottish Marine Ins. Co., 5 Ch. App. 737; Pellet v. Manufacturers' & Merchants' Ins. Co., 104 Fed.

502, 509, 511, 43 C. C. A. 669, 676, 678; Stier v. Imperial Life Ins. Co. (C. C.) 58 Fed. 843, 845, 846.

Moreover, the cause of the termination of this contract fell within two of the causes for such a termination specified in the agreement. The cause was the transfer of all the defendant's property and of its life insurance business to another company, whereby it became incapacitated from continuing to do the business of life insurance. The right to make such a transfer inhered in the corporate power of the defendant, was not renounced or limited by the agreement of agency, but, as we have seen, was impliedly reserved to the defendant, and the exercise of this right was a just and reasonable cause for the termination of the agency contract. It was also a termination of the authority of the company to operate in the state of Kansas (Gen. St. Kan. 1901, § 3423), and each of these causes was stipulated in the agreement to be good ground for the termination of the contract of agency. The defendant, therefore, committed no breach of this agreement of agency by making a contract with the Pittsburg Company whereby it turned over its business and assets to that insurance company and incapacitated itself from continuing to carry on the business of life insurance, and the first question presented in this case must be answered in the negative.

The defendant agreed that after the termination of the contract the plaintiffs will be paid a renewal commission upon subsequent premiums as collected by said company on insurance in force to their credit. There is no claim that the plaintiffs had not received all the commissions due them upon all renewal premiums that had become due when this action was commenced; but they allege that they would have received $35,000 in commissions on future premiums if the defendant had not made the contract whereby it turned over its business and property to the Pittsburg Company, that the defendant thereby disabled itself from collecting these future renewal premiums, and they demand as damages the alleged present worth, $18,-792.60, of their future commissions. They found this claim upon the proposition that where one party to a mutually executory contract notifies the other that he will not fulfill it, or puts it out of his power to perform it before the time of performance by him arrives, the opposite party may sue at once for all the damages occasioned by the anticipatory breach; and they cite Newcomb v. Imperial Life Ins. Co. (C. C.) 51 Fed. 725, MacGregor v. Union Life Ins. Co., 121 Fed. 493, 57 C. C. A. 613, Lewis v. Ins. Co., 61 Mo. 534, Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423, Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, Cutter v. Powell, 2 Smith's Leading Cases, 1212, and Hochster v. De La Tour, 2 El. & Bl. 678. This contention rests upon the erroneous assumption that the agency contract contains an express or implied agreement that the defendant will maintain and continue its insurance business and will collect these future renewal premiums, although in the opinion of the company it becomes unwise, unprofitable, or impossible to carry on its business in that way, or at all. But the company made no such agreement. On the other hand, as we

have seen, it reserved to itself under this contract of agency the corporate power and the right to determine its own business policy, and the term of the continuance of its business, whether or not, and when, if at all, it would reinsure its risks, turn over its business to another company, and cease to carry it on, free from any liability to the plaintiffs for damages on account of the exercise of that right, and the plaintiffs took the chances of that exercise when they signed the agreement. The terms of the contract did not provide that the defendant would collect the renewal premiums and pay the plaintiffs 7½ per cent. commission on them, but that this commission "will be paid" on these premiums "as collected by the company." Literally the contract bound the company to pay the commissions on the premiums actually collected by it only, and only when collected; but the rational interpretation of it is that, subject to the company's right to reinsure its risks, to turn over its property, and to discontinue its business at will, the chance of which the plaintiffs took, just as the defendant took the chance of the plaintiffs' renunciation of their agency, it would use reasonable endeavors to collect the premiums, and when collected would pay the commissions on them to the plaintiffs. As, when the defendant made the contract with the Pittsburg Company whereby it turned over its business and property to that corporation and ceased to insure lives, it exercised a right it had reserved under the contract, a right which it had not agreed that it would not exercise, that act merely wrought a disability to collect the premiums which it had reserved the right to create, the chance of the exercise of which the plaintiffs took when they made the agreement, and it constituted no anticipatory breach of its contract to pay the commissions on the future premiums as collected by it. Pellet v. Manufacturers' & Merchants' Ins. Co., 104 Fed. 502, 510, 43 C. C. A. 669, 677; In re English & Scottish Marine Ins. Co., 5 L. R. Ch. App. 737; Kansas Union Life Ins. Co. v. Burman, 141 Fed. 835, 849, 73 C. C. A. 69; Stier v. Imperial Life Ins. Co. (C. C.) 58 Fed. 843.

The opinions in the cases called to our attention by counsel for plaintiffs do not determine this question otherwise. None of them holds that an insurance company breaks a stipulation to pay a commission on future renewal premiums in a contract of agency at will by agreeing to turn over its property and business to a rival company and discontinuing to write insurance while the opinions of the English Court of Appeals in Chancery and of the Circuit Court of Appeals of the Seventh Circuit and of this court just cited sustain the view which has been expressed. This conclusion is not necessarily inconsistent with the position that, where an insurance company makes an express agreement to employ an agent for a specific term and to pay him commissions during that term upon the business he secures, it breaks the agreement and subjects itself to all the damages which naturally flow from that breach by transferring its property to another and abandoning its business during the agreed term, as in MacGregor v. Union Life Ins. Co., 121 Fed. 493, 495, 498, 57 C. C. A. 613, and Lewis v. Insurance Co., 61 Mo. 534, 539, or radically changes the nature of its business during the term, as in Newcomb

v. Imperial Life Ins. Co. (C. C.) 51 Fed. 725, 727, 728, and Id., 62 Fed. 97, 10 C. C. A. 288, because an implication that the company will continue its business for the agreed term of the agency may inhere in such a time contract, while it does not in a contract of agency at will; and so far as the opinions in these cases depart from the view already expressed they are not convincing and they fail to commend themselves to our judgment.

Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423, was a suit in equity by a holder of a life insurance policy against an insurance company which had reinsured its risks and abandoned its business, and the court held that he had the option to accept the reinsurance or to recover the present value of his policy. But the radical differences between a life insurance policy and a contract of agency at will deprive this decision of both authority and persuasive force in the case in hand. The main object of a contract of life insurance is permanence, security, that shall endure, not only during, but after, life. The parties contemplate that the agreement shall continue during the life of the insured, and that the company will perform its part of it after his death, and, therefore, it is necessarily an agreement that the company will maintain its financial standing and property and continue its business until after the death of the policy holder, and a disposition of both property and business by the company in his lifetime is a patent anticipatory breach of the contract. It is not so with a contract of agency at will. Such an agreement is temporary in character, terminable at the will of either party, implies no continuance, and no agreement of the principal corporation that it will continue its business or refrain from disposing of its property after the agency terminates. The other authorities cited do not relate in any way to the question whether or not the reinsurance of risks and abandonment of business by an insurance company constitutes a breach of a stipulation in a contract of agency at will to pay commissions on future premiums after its termination, and the conclusion is that the disability of the company to collect the future premiums and to pay the commission upon them after the agency terminated, wrought by the contract with the Pittsburg Company, whereby it turned over its property and business to that company and discontinued the latter, was one which the defendant reserved the right to create under the agency contract, that the plaintiffs took that contract subject to the reservation of that right, and that the exercise of it constituted no breach of the stipulation of the agreement under consideration.

There is another reason why the creation of this disability does not sustain an action for an anticipatory breach of this stipulation of the contract. It is that the rule that the creation of a disability to perform a contract, or notice that one will not perform it before the time of performance arrives, warrants an immediate action for damages, applies only to actions on contracts that are mutually executory, such as contracts for marriage, for the rendition of services, or for the transportation or the sale and delivery of property, where the covenants of the parties are interdependent and to be simultaneously

performed. Illustrations of the contracts to which this rule applies are a contract of life insurance, where the undertakings of the parties are mutually executory and to be performed from time to time throughout the life of the party (Lovell v. St. Louis Life Ins. Co., supra); a contract for the future services of a courier to be subsequently paid for, where the employer notified the courier that he would not employ him before the time for the rendition of the services arrived (Hochster v. De La Tour, 2 El. & Bl. [Q. B.] 678), contracts for the delivery of articles purchased in specific portions at different times, to be paid for as delivered (Roehm v. Horst, 178 U. S. 1, 17, 18, 20 Sup. Ct. 780, 44 L. Ed. 953; Nichols v. Steel Company, 137 N. Y. 471, 487, 33 N. E. 561), a contract to marry (Frost v. Knight, L. R. 7 Ex. 111), and a contract to manufacture articles to be paid for upon delivery (Danube & Black Sea Co. v. Xenos, 13 C. B. [N. S.] 825).

But this rule is inapplicable to, and it does not govern, actions upon bonds, notes, and upon other contracts to pay money at times specified, where the party of one part has completely executed the contract and it is executory only upon the part of the other party. No action for damages lies before the time of payment arrives against one who disables himself from paying, or gives notice that he will not pay, his obligations under contracts of this kind. Roehm v. Horst, 178 U. S. 1, 17, 18, 20 Sup. Ct. 780, 44 L. Ed. 953; Nichols v. Steel Company, 137 N. Y. 471, 487, 33 N. E. 561; Washington County v. Williams, 111 Fed. 801, 810, 49 C. C. A. 621, 630. The claim to recover for the breach of the agreement to pay the commissions on the renewal premiums due after the termination of the agency contract is founded on an agreement of the latter class. The plaintiffs have performed their part of the contract of agency, they have completely earned the commissions, the contract is completely executed on their part, nothing remains executory but the agreement of the defendant to pay the commissions when the renewal premiums are collected, and those premiums had not become due or been collected, and the time had not arrived when the commissions were due when this action was brought. The defendant's creation of its disability to collect the premiums and to pay the commission did not make the latter due earlier, and it created no cause of action for their present worth, and this action was prematurely brought.

In Washington County v. Williams, 111 Fed. 801, 810, 49 C. C. A. 621, 630, an action was brought upon bonds issued by the county whereby it agreed to pay their principal and interest pro rata with the others of an issue of 150 in number out of a special fund to be created by the levy of an annual tax at a fixed rate upon all the taxable property of the county, and it had disabled itself from paying anything upon these bonds by refusing to make the levy and by denying all liability thereon. The Circuit Court rendered judgment for the amount of the principal and interest, in reliance upon the rule that is invoked in this case; but this court, after a careful review of the authorities, reversed that judgment and held that this doctrine applied to contracts that were mutually executory only, that it would

not sustain an action upon contracts to pay money executory on one part only before the time of payment there specified, notwithstanding the fact that there were preliminary acts to be performed by the obligor, such as the levy of the tax before the time of payment would arrive. The case at bar falls far within the decision of that case, and the second question presented in this case must be answered in the negative.

This case has been considered in the light of the broad, general averments of the complaint that the defendant made such a contract with the Pittsburg Company that it disabled itself from continuing its business and from collecting the future renewal premiums; but no inference should be drawn from the course here pursued to the effect that the court was able to wink so hard as not to see that the contract with the Pittsburg Company was probably the ordinary reinsurance agreement, that the latter company may be liable to pay the plaintiffs their commission upon the renewal premiums it collects as they fall due (Schrimplin v. Farmers' Life Association, 123 Iowa, 102, 98 N. W. 613), and that it is not improbable that the reinsurance increased, rather than diminished, the plaintiffs' chance of obtaining their commissions. No opinion is formed or expressed regarding the liability of either of the insurance companies for these commissions when they become due.

The decision of the court in this case is, for the reasons which have now been stated, that the facts alleged in the complaint set forth no cause of action at the time when that pleading was filed; and the judgment below is affirmed.

VAN DEVANTER, Circuit Judge (dissenting). Although concurring in the conclusion that the plaintiffs' agency was terminated lawfully, leaving them without any right of action in respect of the expenditures made in anticipation of its continuance, I am unable to assent to the judgment of affirmance in other respects. It is quite clear, as it seems to me, that the defendant engaged to hold itself in readiness to receive and collect the future renewal premiums upon the insurance solicited and procured by the plaintiffs during the life of their agency, and to pay to them the stipulated commission upon those premiums as collected by it; that by wholly incapacitating itself from receiving or collecting those premiums it unequivocally breached its engagement in that regard; and that that engagement was not an ordinary contract for the payment of money, but was one the breach of which in the way described entitled the plaintiffs, at their election, to maintain a present action to recover their damages. Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; In Re Neff, 157 Fed. 57, 60, 84 C. C. A. 561, 564; Northwestern National Life Ins. Co. v. Gray, 161 Fed. 488, 88 C. C. A. 430. I perceive no reason for believing that the plaintiffs, by reason of having performed their part of the contract, are in a less favorable position than if the contract was still executory as to them. The case of Washington County v. Williams, cited in the majority opinion, does no more

than to hold, following the limitation stated in Roehm v. Horst, that the rule in respect of the right flowing from an anticipatory breach has no application to money contracts, pure and simple, where one party has fully performed his undertaking, and all that remains for the opposite party to do is to pay a certain sum of money at a certain time or times. This, as it seems to me, is not such a case.