Smith, Appellant, vs. Northwestern National Life Insurance Company of Minneapolis, Minnesota, Respondent.

*December 15, 1904—January 10, 1905.*

*Life insurance: Assessment associations: Statutes: Impairment of contract obligations: Classification of members: Change to stipulated premium: Rights of assessment members: Findings: Proof of loss: Maturity of policy: Equity: Interest.*

1. An assessment insurance association, assignor of defendant, entered into an agreement with plaintiff that, if he paid the specified assessments as called for up to January, 1902, it would pay him the amount of $2,000, provided eighty per cent. of an assessment, at the specified rates, on all its members, would produce that amount. Ch. 270, Laws of 1899, empowered corporations, like defendant's assignor, to exercise an election to thereafter make contracts to accept from their members, as the price

of their insurance, a stipulated sum at fixed periods instead of fixed sums at indefinite periods, as assessments might become necessary. Sec. 4, of said ch. 270, declared that the adoption of the privileges offered should in ·no way annul, modify or change any existing contracts or liabilities of such existing corporations, and that any and all such existing contracts and liabilities should continue in full force and effect the same as though such corporation had not reincorporated or qualified under that act. Defendant's assignor took the steps necessary to authorize it to do business under the provisions of ch. 270, and thereafter received no new members upon an agreement to pay assessments, but solely upon an agreement to pay a stipulated premium. Thereupon it induced a large number of its old members, holding assessment certificates, to surrender them and take out membership upon a basis of a stipulated premium, giving them as an advantage the rate of premium based upon their age at the time of originally becoming members. Afterwards defendant, by contract with its assignor, reinsured all of its insurance outstanding, took over all its assets and members and assumed its liabilities. Plaintiff never surrendered his original assessment certificate but performed all his part of that contract. *Held:*

(1) No impairment of plaintiff's contract was intended by ch. 270.

(2) Under ch. 270, as applied to pre-existing assessment contracts, there was no authority to make a classification of members, so that the moneys derived from those existing before the act were alone applicable to the insurance contracts held by them, while the moneys collected from members entering afterward must be exclusively devoted to their insurance.

(3) By taking the stipulated premium from its new members, the corporation must be held to have commuted and collected from them in advance their assessments to meet plaintiff's policy.

2. A finding of fact on any question is conclusive where no exception is reserved thereto.

3. Plaintiff's certificate in an assessment insurance association was not payable until sixty days after proof of loss. Within twenty days after maturity of the certificate, plaintiff commenced an action in equity to compel reinstatement of plaintiff's insurance notwithstanding a forfeiture declared by defendant, and such reinstatement was adjudged. *Held,* that it was entirely proper for a court of equity, having obtained jurisdiction over the parties and the controversy, to proceed to enter a money judgment on the reinstated insurance, it having matured before trial.

4. In such case, it not appearing when the proofs of loss would have been made but for defendant's repudiation of plaintiff's rights, the court adopts the date of service of the complaint as the time from which the sixty days should be computed, and allows interest from the later date.

APPEAL from a judgment of the circuit court for Dane county: WARREN D. TARRANT, Judge. *Modified and affirmed.*

For a number of years prior to 1893 there had existed a mutual insurance assessment company under the laws of Wisconsin, known as the Northwestern Mutual Relief Association of Madison, Wisconsin, hereinafter called the "Madison Company." That company reorganized under the provisions of ch. 440, Laws of 1891, and while so existing issued to the plaintiff its policy or certificate of membership dated February 24, 1893, agreeing, among other things, that upon January 18, 1902, he being then alive, they would pay to him eighty per cent of an assessment levied and collected therefor, not exceeding $2,000. The by-laws provided for assessment upon all members of the association upon the maturity of any certificate, according to a specified table graded according to the amounts of the respective policies and according to the age of the members. These assessments were, by the by-laws, to be divided, twenty per cent. to a reserve fund, out of which was to be paid the expenses of the company, and eighty per cent to a relief fund, out of which was to be paid the policyholder an amount not exceeding such eighty per cent, nor exceeding the stipulated maximum of his policy. In 1899, by ch. 270, Laws of 1899, authority was given to existing companies like the Madison Company, upon declaring their intention so to do, to conduct business upon a stipulated premium basis. At that time the Madison Company had a membership such that eighty per cent. of an assessment upon all its members, at the rates specified in the by-law tables, largely exceeded the maximum amount payable to a certificate

holder; but the amounts which had been accumulated into
the reserve and relief funds at that time are not shown.   The
Madison Company took the steps necessary to authorize it to
do business under the provisions of ch. 270, and thereafter
received no new members upon an agreement to pay assess-
ments, but solely upon the agreement to pay stipulated
premium; and, shortly after such reorganization, induced
a large number of its old members holding assessment cer-
tificates to surrender them and take out membership upon the
basis of stipulated premium, but gave them, as an advan-
tage resulting from their old membership, a rate of premium
based upon their ages at the time of originally becoming
members instead of at the higher rate which would have
pertained to their ages at the time they made application for
the change.   It was stipulated, for the purposes of this case,
that the average per capita assessment upon the assessment
basis was eighty-two cents to meet each maturing certificate
like plaintiff's, and that the average monthly stipulated
premium was eighty-two cents.

On Aug. 29, 1901, the defendant, a Minnesota corporation,
originally authorized to write insurance on the assessment
plan, but afterwards on the stipulated premium plan, and
which then had no members upon the assessment plan, entered
into a written contract with the Madison Company, which
recited that the two companies had agreed to consolidate, and
that the defendant reinsured all of the insurance outstanding
against the Madison Company, took all the assets of that
company, and took over all its members as members of the
defendant.   The findings declare, without exception by the
defendant, that the defendant "thereby assumed all liabilities
under the terms and conditions of the plaintiff's certificate of
membership above mentioned."   There is no evidence as to
the amount of the assets of the Madison Company, either in
its reserve, relief, or mortuary funds, which were taken over
by the defendant.   At the time of such consolidation and

reinsurance there were about 3,400 members of the Madison Company, of whom about 300 held assessment certificates generally like the plaintiff's, and the rest held stipulated premium policies or certificates. Eighty per cent. of an assessment, according to the table of rates upon all of the members of the Madison Company existing on April 12, 1902, would have produced a sum largely in excess of the $2,000 maximum of plaintiff's certificate. Eighty per cent. of an assessment merely upon those members who held the assessment certificates would have produced $188.60. It was conceded upon the trial by the defendant's attorney that the defendant was willing to pay the amount which an assessment would produce on the membership of the Madison Company, but contended that no assessment could be levied upon the stipulated premium members. The trial court held in accordance with this contention, and rendered judgment in plaintiff's favor for the $188.60, with interest from January 20, 1902, from which judgment plaintiff appeals. There were also allegations, prayer, and judgment for relieving plaintiff from a forfeiture and requiring his reinstatement, from which neither party appeals.

*Frank E. Parkinson,* for the appellant, contended, *inter alia,* that a corporation cannot amend or change its charter or its by-laws or its contract of insurance, and thereby change or destroy the substantial rights of its members, unless such power is expressly reserved or unless the member shall give his express consent. *Morrison v. Wis. Odd Fellows' M. L. Ins. Co.* 59 Wis. 162; *Parish v. N. Y. Produce Exchange,* 169 N. Y. 34, 61 N. E. 977, 979; *Redky Citizens' Nat. G. L. F. & P. Co. v. Orr,* 27 Ind. App. 1, 60 N. E. 716; Stats. 1898, sec. 1748, subd. 5; *Benton v. Brotherhood R. R. Brakemen,* 146 Ill. 570, 34 N. E. 939; *Covenant Mut. L. Asso. v. Kentner,* 188 Ill. 431; *Seiverts v. Nat. Ben. Asso.* 95 Iowa, 710, 64 N. W. 671; *Langan v. Am. Leg. of Honor,* 70 N. Y. Supp. 663. When the appellant's right to eighty per cent.

of an assessment on all the members was once fixed in the
by-laws and his certificate of membership, no retroactive by-
law or other retroactive act of the company would be tolerated
to destroy his right. *Peterson v. Gibson,* 191 Ill. 365; *Voigt
v. Kersten,* 164 Ill. 314; *Covenant Mut. L. Asso. v. Tuttle,*
87 Ill. App. 309. Not even will legislative authority validate
the act of any company attempting by by-law, or by any
other act, to reduce or change the rights of its members.
*Becker v. Farmers' Mut. F. Ins. Co.* 48 Mich. 610; *Peterson
v. Gibson,* 191 Ill. 365; *Covenant Mut. L. Asso. v. Kentner,*
188 Ill. 431. The member's consent cannot be taken by impli-
cation. It must be founded upon express, positive, clear
agreement. *Benton v. Brotherhood R. R. Brakemen,* 146 Ill.
570, 34 N. E. 939; *Philadelphia & R. R. Co. v. Love,* 125
Pa. St. 488; *Middlesex Turnpike Co. v. Swan,* 10 Mass. 384;
*Starling v. Supreme Council,* 108 Mich. 440, 66 N. W. 340.
Not only are amendments to the by-laws forbidden, but any
and all other acts destroying contract rights are equally
forbidden. *Becker v. Farmers' Mut. F. Ins. Co.* 48 Mich.
610; *Ins. Co. v. Connor,* 17 Pa. St. 136; *Great Falls Mut.
F. Ins. Co. v. Harvey,* 45 N. H. 292; *Hamilton Mut. Ins.
Co. v. Hobert,* 2 Gray, 543; *N. E. Mut. F. Ins. Co. v. Butler,*
34 Me. 451; *Revere v. Boston Copper Co.* 15 Pick. 351, 363;
*Am. Bank v. Baker,* 4 Met. 164, 176; Angell & Ames, Corp.
339, 345. The "good of the order" does not warrant radical
changes or change of contract rights, no matter how laudable
the change. It is a question of reserved power and not of
good faith. *Gaut v. Am. Leg. of Honor,* 107 Tenn. 603, 64
S. W. 1070; *Union Locks & Canals v. Towne,* 1 N. H. 44;
*Middlesex Turnpike Co. v. Swan,* 10 Mass. 384; *Langan v.
Am. Leg. of Honor,* 70 N. Y. Supp. 663; *State ex rel. Atty.
Gen. v. Monitor Fire Asso.* 42 Ohio St. 555. The express
power to raise money by assessment excludes every other
power or plan. *Kennan v. Rundle,* 81 Wis. 212, 225;
*Rochester Ins. Co. v. Martin,* 13 Minn. 59; *Farmers' & M.*

*Bank v. Baldwin,* 23 Minn. 198; *Dietrich v. Madison Relief Asso.* 45 Wis. 79; *Thomas v. R. R. Co.* 101 U. S. 71; *Jemison v. Citizens' Savings Bank,* 122 N. Y. 135; *Penn. R. Co. v. St. Louis, A. & T. H. R. Co.* 118 U. S. 630; *Central Transfer Co. v. Pullman P. C. Co.* 139 U. S. 24. The legislature under no pretense whatever, directly or indirectly, has any power to invade the vested rights of a contract. And much less has it the power to authorize or to license the board of directors of a corporation to do so. U. S. Const., art. 1, sec. 9; *N. Y. & N. E. R. Co. v. Bristol,* 151 U. S. 556; *Lauman v. Lebanon Valley R. Co.* 30 Pa. St. 42; *Becker v. Farmers' Mut. F. Ins. Co.* 48 Mich. 610; *Covenant Mut. Life Asso. v. Kentner,* 188 Ill. 431; *The People v. Empire Mut. L. Ins. Co.* 92 N. Y. 105; *Peterson v. Gibson,* 191 Ill. 365. Consolidating corporations cannot enter into contracts limiting their liability on the obligations of the old corporations. It would be intolerable that one company by consolidating with another should acquire its rights and property and then escape its liabilities. *Cleveland, C. C. & St. L. R. Co. v. Prewitt,* 131 Ind. 557; *Lauman v. Lebanon Valley R. Co.* 30 Pa. St. 42; *Louisville, N. A. & C. R. Co. v. Boney,* 117 Ind. 501; *Polhemus v. Fitchburg R. Co.* 123 N. Y. 502; *Thompson v. Abbott,* 61 Mo. 176; *Grenell v. Detroit Gas Co.* 112 Mich. 70, 70 N. W. 413; *Columbus, C. & I. C. R. Co. v. Skidmore,* 69 Ill. 566; *Western Union R. Co. v. Smith,* 75 Ill. 496; *Indianapolis, C. & L. R. Co. v. Jones,* 29 Ind. 465.

For the respondent there was a brief by *Burr W. Jones,* attorney, and *Brown & Kerr,* of counsel, and oral argument by *Mr. Jones.*

Dodge, J. The Madison Company entered into an agreement with plaintiff that, if he paid the specified assessments as called for up to January, 1902, it would pay him the amount of $2,000, provided eighty per cent. of an assessment, at the specified rates, on all its members, would produce that

amount. Plaintiff has performed his part of the agreement, and defendant now contends, and the trial court has held, that he must be satisfied to receive the amount of an assessment on only about one tenth of all the members. The inquiry is at once suggested, what has occurred to accomplish such modification? Not much aid is offered by respondent's brief in discovering an answer to that query. The burden of the argument is cast in support of the contention that it might have been accomplished by a by-law or by a statute without invasion of constitutional prohibition against impairing obligation of contract; the former under reserved power to make or change by-laws, the latter under reserved power in legislature to change corporate charters. As to the first of these it is sufficient to note, first, that the reservation of power to change by-laws is expressly limited so that "the amount of the benefit shall not be reduced;" but, further, there is no evidence that the by-laws of the Madison Company ever were changed after 1892. If modification of plaintiff's contract rights is to be ascribed to any statute, none is suggested, except ch. 270, Laws of 1899, which, generally speaking, empowered corporations like the Madison Company to exercise an election to thereafter make contracts to accept from their members, as the price of their insurance, a stipulated sum at fixed periods instead of fixed sums at indefinite periods, as assessments might become necessary. In construing such statute it must be remembered that the state has only reserved power to modify the contract between itself and the corporation which is involved in the latter's charter or franchise, and that the constitutional prohibition against impairing the obligation of contracts was in full force in protection of any contracts which a corporation might have made with others. *Nazro v. Merchants' Mut. Ins. Co.* 14 Wis. 295; *Kenosha, R. & R. I. R. Co. v. Marsh,* 17 Wis. 13, 18. In the law in question, however, we find the legislature expressly declaring that the adoption of the privilege it offers to such

corporations "shall in no way annul, modify or change any existing contracts or liabilities of such existing corporation, and any and all such existing contracts and liabilities shall continue in full force and effect the same as though such corporation had not reincorporated or qualified under this act." (Sec. 4.) So we must conclude that the legislature intended no impairment of plaintiff's contract, and any discussion of its powers in that respect is but academic.

Counsel seem to assume that the act of 1899 authorized, if not required, an existing corporation, availing itself of the privileges thereby granted, to make a classification of its members so that the moneys it derived from those existing before the act were alone applicable to the insurance contracts held by them, while the sums collected from members entering afterward must be exclusively devoted to their insurance. They press upon our attention cases of which *Supreme Lodge K. P. v. Knight,* 117 Ind. 489, 20 N. E. 479, is perhaps the strongest, where a fraternal order, having at first only one class of members, afterward, by by-law, established other classes, each by itself mutual, but having no interest in the funds of any other class. Conceding, without deciding, that some such legislation or by-law might have been valid, we find nothing of the sort in the act of 1899, and, as already stated, we find no by-law. That statute, while preserving unimpaired and unmodified the agreement to pay to each old member the sum specified out of an assessment to be collected from all its members, authorized the corporation to contract with new members for payment of the sum estimated to be sufficient to meet all expenses and insurance obligations of the company, at an agreed time and rate, with power of further assessment if the estimate should at any time prove inadequate. In this is nothing to indicate that the sums so collected from the new members could not be applied to the old obligations of the corporation; no authority to so agree. True, it is required that there be accumulated and maintained

·a reserve fund of certain minimum to meet the life policies
written under the new system, but there is no requirement
that the premiums upon such policies shall be entirely devoted
to that end.    They might be fixed at such a rate as to produce
a greater amount.   Nor was there any requirement that such
reserve be accumulated exclusively from the stipulated prem-
iums.   Any receipts of the corporation, except on limited pay-
ment policies (section 7), might be carried to such reserve,
including assessments collected from old policy holders.
True, it is in evidence that no assessments ever have been
·so used, but we find nothing in the statute to prevent it.
After most careful study of ch. 270 as applied to pre-existent
assessment companies, we can find nothing to warrant any
independence of one class of members from another.    The
methods of the collection of the price of the insurance differed,
but all sums collected, by whatever method, became the funds
of the corporation, subject to be used to discharge its obliga-
tions as they matured.

But it is said the plaintiff is only entitled to eighty per
·cent. of what the company can collect by an assessment, and,
except as to the sum of $188.60, the company can collect
nothing by an assessment, because it is bound by contract
with the later members to acceptance of stipulated premiums;
also it is objected that the by-laws existing when plaintiff's
policy was issued declared that his only form of action should
be to compel the levy of an assessment.    These objections
are superficial.   If the contract had been made by an indi-
vidual to pay the amount he could collect by assessment at
.a specified rate upon a certain list of persons, we apprehend no
one would doubt his liability to a money action if it appeared
that such individual had entered into a subsequent agreement
with some of his other policy holders to accept certain stipu-
lated amounts in satisfaction of their liability to assessment
and had received such amounts.   None would doubt that, in
legal effect, he had collected the assessments.    We cannot

view the situation of the Madison Company differently. By the act of 1899 it was given the power to make exactly such an agreement as that above supposed, and did make it with all the new members. Indeed, as to 2,960 of them, who had formerly been assessment members, it allowed them a credit or benefit because of their interest in a fund which had been accumulated out of the excess of assessments which plaintiff and others had paid up to that time. This, if done for the purpose of inducing them to withdraw from the assessment class in order to reduce the amount of plaintiff's demand against the company, would be such bad faith as to close the company's mouth to any defense based thereon. We think it plain that, by taking the stipulated premiums from its new members, the Madison Company must be held to have commuted and collected from them in advance their assessments to meet the plaintiff's policy.

It is further contended that, although the Madison Company might have been liable for the whole amount of plaintiff's certificate, the respondent is not so liable because of limitations imposed in the contract of consolidation made between the two corporations. We pass the question whether the defendant could take over all the property, mortuary funds, reserve, and the like of another insurance company, and at the same time, by contract with that company, limit or diminish the existing rights of its policy holders. In this instance the consolidation agreement expressly assumes all the liabilities of the Madison Company, subject only to the articles and by-laws of the defendant; but no such articles or by-laws were offered in evidence, except a statute of Minnesota which, perhaps, enters into them, and which provides that in case of consolidation the new company shall be liable for the payment of all obligations of the consolidated companies. Hence there is no proof to limit the complete assumption by defendant of the Madison Company's liability to plaintiff. Any such question is, however, foreclosed by the

finding of the fact that such assumption was made, since defendant reserved no exception thereto.

Since it is conceded that eighty per cent. of an assessment at the agreed rates upon all the members of the Madison Company still members of the defendant company, or even upon those who, as we hold, have already paid their assessments in the commuted form of stipulated premiums, would considerably exceed the $2,000 maximum of plaintiff's certificate, we can find no escape from the conclusion that defendant was and is liable to him for that amount.

Some objection is suggested to plaintiff's right to recover upon the certificate because, by its terms, it was not payable until sixty days after proofs of loss. No formal proofs of loss had been made, because the defendant declared the certificate forfeited and refused to send blanks for proofs. This action, however, was commenced within about twenty days after maturity of certificate, viz., February 7, 1902. This might be a serious obstacle to the maintenance of an action at law upon the certificate, but the fact is that this action was primarily one in equity to compel reinstatement of plaintiff's insurance notwithstanding a forfeiture in August, 1901, and such reinstatement is adjudged without appeal by defendant. For these reasons it is entirely proper for the court, in equity, having acquired jurisdiction over the parties and the controversy, to proceed to do complete justice, though part of the relief consists of mere money recovery, and, the money being due before trial, no insuperable obstacle to judgment for its recovery exists. We find no sufficient evidence as to when proofs would have been made but for defendant's repudiation of plaintiff's right; hence we adopt the date of the service of the complaint, February 20, 1902, since that document gave all needed information for adjustment. The actual payment should have been within sixty days from that date, to wit, April 21st; hence interest should then commence. *Laycock v. Parker,* 103 Wis. 161, 187, 79 N. W. 327.

*By the Court.*—Judgment appealed from is modified as of its date by changing the amount of damages from $206.45 to $2,265, and the total to $2,310.49, and as so modified is affirmed; appellant to recover costs in this court.

SIEBECKER, J., took no part.