NORTHWESTERN NAT. LIFE INS. CO. OF MINNEAPOLIS, MINN., v. GRAY.

GRAY v. NORTHWESTERN NAT. LIFE INS. CO. OF MINNEAPOLIS, MINN.

(Circuit Court of Appeals, Eighth Circuit. April 27, 1908.)

Nos. 2,662, 2,672.

1. INSURANCE—REINSURANCE BY LIFE COMPANY—RIGHTS OF POLICY HOLDER.
   A contract of reinsurance between two life insurance companies, by which one transfers all of its assets to the other and ceases business, thus disabling itself from performing its executory contracts with its policy holders, while the other assumes such contracts on terms agreed .upon, is not binding upon such policy holders, in whose favor a right of action at once arises against their own company for breach of contract. Such a policy holder is, however, put to his election, and if he accepts the reinsurance offered he is bound by the terms of the contract between the two companies.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1807.]

2. SAME—ELECTION—ACCEPTANCE OF POLICY FROM REINSURING COMPANY.
   Defendant, a life insurance company on the fixed premium plan, took over the assets of an assessment company under a contract by which

it assumed all the liabilities of the other company, but subject to the provisions of its own articles of incorporation and by-laws, as they then existed or as they might thereafter be amended. It thereupon amended its by-laws, as affecting policies or certificates assumed, by providing that "the premium to be paid thereon by the insured shall be the single premium according to the life expectancy or single premium rate table adopted by the company at the attained age of the insured at the time of issuing or assuming such policy, * * * which single premium may be paid in any installments agreed upon or fixed by the board of direct-ors. * * * Any excess thereof [interest], being in payment and ex-tinguishment of the principal amount of said lien, and in the event of the death of the insured occurring at any time before a sum equal to the single premium as aforesaid, with 4½ per cent. interest per annum in advance from the date of such assumption, shall be paid in cash to this company, there shall be reserved from the face of such certificate or policy, and charged as a lien thereon, a sum equal to the unpaid portion of such single premium and interest." Plaintiff was the holder of a certificate of the reinsured company, and received from defendant a notice of the reinsurance, a copy of such by-law, and a new policy, with a statement of the amount of the lien thereon, and giving him the option to pay the same in cash or to pay certain bimonthly installments, which, however, were less than the accumulating interest, so that, although the installments were paid, the lien constantly increased, and the value of the policy diminished. Plaintiff paid such installments until the maturity of his policy. *Held*, that he must be presumed to have known his legal rights, and that by accepting the policy and making the payments there-under he became bound by its terms.

In Error to the Circuit Court of the United States for the District of Nebraska.

This was an action at law, instituted by Gray against the insurance com-pany, to recover on a matured certificate of membership for $4,000 originally (in 1883) issued to him by the Northwestern Mutual Relief Association of Wisconsin. The Wisconsin company did business on the assessment plan, whereby on the death of a member an assessment was made upon surviving members to raise a fund to pay the beneficiary of the deceased member. In 1899 it availed itself of the provisions of the act of the Legislature of Wis-consin (chapter 270, p. 460, Laws 1899), changed its name to the Northwestern National Life Insurance Company, and reorganized so as to do business on the stipulated premium plan, whereby premiums are payable not as a result of assessments on the happening of the death of a member, but in certain sums at fixed periods. In 1901 the defendant company was incorporated under the provisions of chapter 178, p. 233, of the Laws of Minnesota of 1901, to do business on the stipulated premium plan, with power to assume and reinsure the risks and members of other companies and to make by-laws and amendments not inconsistent with the Constitution and laws of the state. On August 29, 1901, defendant entered into a contract with the Wisconsin company by virtue of which it took over all the assets of that company and reinsured its risks. The contract after providing for the assumption of obligations of the Wis-consin company contained the following: "And the assuming of each policy or certificate by the party of the first part [Minnesota company] is expressly subject to the provisions of the articles of incorporation and by-laws of the party of the first part as the same now exist, or as they may hereafter be amended, * * * all whereof constitute and form a part of each certificate and policy hereby assumed." It also contained the following stipulation: "And said party of the first part agrees that all moneys and property received by it, and now constituting or representing the mortuary funds of the party of the second part [the Wisconsin company], and all moneys hereafter col-lected by it from members of the party of the second part for mortuary pur-poses, which under their present contracts are applicable to and should be set aside for a mortuary fund, will be by said party of the first part segre-

gated, set aside, and used for and applied to the payment of the new valid and existing death, disability, or maturing claims of the party of the second part and expenses incurred until the same shall have been paid, settled, or discharged in full." The result was that 1,310 members of the Wisconsin company, including Gray, accepted re-insurance by the Minnesota company. Of that number 74 held assessment certificates similar to Gray's certificate, and 1,228 had originally held assessment certificates, but had surrendered them to the Wisconsin company and accepted in lieu thereof stipulated premium policies after its reorganization in 1899.

By way of inaugurating its business the defendant company on August 28, 1901, adopted a by-law known as section 6 of article 10, which is as follows: "In all cases" where the policy or certificate of another company is assumed "the premium to be paid thereon by the insured shall be the single premium according to the life expectancy or single premium rate table adopted by the company at the attained age of the insured at the time of issuing or assuming such policy, certificate, or contract by this company, which single premium may be paid in any installments agreed upon or fixed by the board of directors. * * * Any excess thereof [interest] being in payment and in extinguishment of the principal amount of said lien, and in the event of death of the insured occurring at any time before a sum equal to the single premium as aforesaid, with four and one-half per cent. interest per annum in advance, from the date of such contract or such assumption, shall have been paid in cash to this company there shall be reserved from the face of such certificate or policy and charged as a lien thereon a sum equal to the unpaid portion of such single premium and interest, and payment of a sum equal to the face of the policy, less the amount of said lien and interest, shall be payment in full of claim under said policy and the full measure of liability of the company thereunder."

On September 2, 1901, the president of the defendant company issued a circular letter, advising the members of the reinsured company of the assumption by his company of the policies or certificates of insurance previously issued by the reinsured company to them. That letter contained the following statement: "Under the provisions of this contract the Northwestern National Life Insurance Company, of Minneapolis, Minn., assumes your policy or certificate of insurance subject to its terms and provisions in all respects, thereby constituting you a member of this company, subject to its articles of incorporation, by-laws, and the laws of the state of Minnesota. *. * * We hope, therefore, that you will appreciate the desirability of maintaining your policy or certificate with the Northwestern, and beg to assure you," etc. "As soon as possible a proper and appropriate certificate of reinsurance will be furnished, to be attached to your policy or certificate, showing that the same is continued as the policy of this company."

On September 3, 1901, the defendant company, by its president and secretary, executed and delivered to the plaintiff, Gray, the following certificate: "This is to certify that the Northwestern National Life Insurance Company, of Minneapolis, Minnesota, did upon the 29th day of August, 1901, by a contract of consolidation, receive into its membership as members and did re-insure all living members of the Northwestern National Life Insurance Company, of Madison, Wisconsin, who upon said date appeared upon the books of said last-named company, to be and who actually were members in good standing thereof and therein, including policy No. 682 on the life of Robert Gray, Schuyler, Neb., subject to their several policies or certificates issued by said company, of Madison, Wisconsin, and to the terms and conditions of said contract of reinsurance; it being expressly stipulated that all of said contracts are to be construed as contracts of the state of Minnesota, and in accordance with the laws of said state, and are assumed subject to the by-laws and articles of incorporation of the reinsuring company, as they now or hereafter may exist, and to the laws of the state of Minnesota, and especially to chapter 178 of the Laws of 1901."

On December 31, 1901, the defendant company adopted a resolution, a part of which is as follows: "Whereas, this company has under a certain contract of reinsurance reinsured or assumed the outstanding risks of the Northwestern National Life Insurance Company, of Madison, Wisconsin,

including those carried upon their books as post mortem assessment certificates or policies: Now, therefore, be it resolved that in accordance with section six (6) of article (10) of the by-laws of this company [partly quoted above] premiums payable on account of each thousand dollars represented by the face of each of said policies or certificates, shall be the single premium provided by the agent's manual, or premium rate book, of this company for policies issued on the life expectancy plan, each single premium being based upon the age of the assured on August 29, 1901; that the holder of each such policy now in force be permitted to pay said single premium in cash at his option but that if not paid, and until so paid, payments on account thereof may be made in bimonthly installments, payable on the 10th day of February, 1902, and bimonthly thereafter, each of which said installments shall be as fixed by the following table, said installments being based upon the age of the insured at the date of original issue of the policy by the said Northwestern National Life Insurance Company, of Madison, or Northwestern Relief Association, its prior name." Then follows a table fixing the installments according to age at the date of original issue, and in effect scaling or commuting all certificates of the old series issued before January 25, 1890, to $3,000 and all certificates issued after 1890 to $4,000.

On January 2, 1902, a copy of this resolution was sent to plaintiff, Gray, by the defendant company. The letter transmitting the same reads as follows: "Minneapolis, Minn., Jan. 2, 1902. Dear Sir: Inclosed herewith we hand you copy of a resolution adopted by the board of directors of this company at its regular meeting held at its home office in this city on the 31st day of December, 1901. In accordance therewith your policy No. 52,795 is charged with a lien of $2,096.94 [this sum was fixed on the assumption that the policy had been scaled down to $3,000], "the same being the single premium referred to and imposed by virtue of said resolution as authorized by section six (6) of article ten (10) of the by-laws of the company, copy of which by-laws is also inclosed herewith. The bimonthly premium which you are required to pay on February 10, 1902, and every two months thereafter, is $14.10, and, if not paid when due your policy becomes ipso facto null and void from date of default in such payment. You have the privilege of paying full single premium in cash at any time while the policy is in force, in which event in case of death the policy will be worth to the beneficiary named its full face. * * * but, if death occurs before the lien is fully paid, the unpaid part thereof will be deducted from the face of your policy at your death, the balance constituting the full measure of the company's liability thereunder. Under the terms of the policy as existing heretofore, its value at death was limited to the net proceeds of an assessment upon members of the company holding policies of the same kind or class, amounting to only $414.60 from last assessment. Under and by virtue of this resolution said policy, after deducting the present amount of the lien, is worth net $903.06. * * *"

It is stipulated that the single premium necessary to buy $1,000 of insurance at the age of 68, which was Gray's age at the time of reinsurance, was $698.98, and also that Gray paid the defendant company the sum of $14.10 every two months from and after February 10, 1902, until May 17, 1906, when his certificate matured and became payable. Plaintiff's suit, against the reinsuring company only, is predicated upon the original certificate of membership in the Wisconsin company, which matured in 1906, the contract of reinsurance made between the Wisconsin company and the defendant company, and the certificate issued by the defendant company to him, and seeks to recover the full sum of $4,000 specified in the original certificate of membership. This is on the theory that the scaling of his policy from $4,000 to $3,000, and the fixing of a lien for the payment of the single premium, were unauthorized and void. Defendant, without conceding any want of authority or illegality in scaling down the policy from $4,000 to $3,000, for the purposes of this case waives any claim by virtue of that scaling, but contends that the lien fixed against the policy of $698.98 for each $1,000 insured was proper and legal, and that the amount thereof, with interest, less any amounts paid thereon by Gray in the shape of bimonthly payments between the years 1902 and 1906, when it matured, should be deducted from the face of the policy.

The court below directed a verdict for the plaintiff for $3,157; that is, for $3,000, the face of the policy as scaled, together with interest. Each party prosecuted a writ of error.

Frank E. Parkinson (George W. Wertz, on the brief), for plaintiff.

Ralph W. Breckenridge. (Charles J. Greene and Thomas H. Matters, on the brief), for defendant.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge (after stating the facts as above). Gray had a contract, made in 1883, consisting of a certificate of membership with the Wisconsin company, whereby he was obligated to pay certain assessments which might be made by the company on the occasion of the death of his associate members, and to continue doing so until the maturity of his certificate. The company on its part obligated itself to pay Gray in 1906 80 per cent. of an assessment that might be levied and collected upon its members, not exceeding, however, $4,000. To say nothing of the reorganization of the Wisconsin company in 1899, whereby it abandoned the principle upon which its business had theretofore been conducted, by entering into the reinsuring contract with the Minnesota company in 1901 and transferring its assets to the latter company, it thereby disabled itself to perform its part of the executory contract with Gray and renounced its obligation. A cause of action at once accrued to Gray for breach of the contract. Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. What his remedies were for the breach need not be dwelt upon. Suffice it to say he did not avail himself of any of them. However binding and obligatory the contract of reinsurance was as between the two insurance companies, it could not and did not obligate any of the original certificate holders of the Wisconsin company to accept contracts of reinsurance from the Minnesota company. Whether they should do so, or whether they should resort to other remedies for securing relief occasioned by the breach of their contracts, was optional with them. Lovell v. St. Louis Mutual Life Ins. Co., supra.

Gray, on September 2, 1901, shortly after the reinsurance contract was executed, was advised by the Minnesota company of its assumption of his certificate, and the hope was expressed that he would deem it desirable to maintain his policy or certificate with the Minnesota company. He was also at the same time advised that a certificate of reinsurance would soon be issued to him. To these announcements he made no objection. Soon thereafter the Minnesota company executed and delivered to him its own certificate, reciting therein its execution of the reinsurance contract, the fact that Gray was a member in good standing in the reinsured company, and obligating itself to reinsure him on the terms and conditions of the contract of reinsurance and subject to the by-laws and articles of incorporation of the reinsuring company as they then or thereafter might exist. This certificate, also, was received by Gray without objection, and he counts on it in

this action. Soon thereafter the Minnesota company adopted the resolution of December 31, 1901, fixing the single premium to be paid by holders of assessment certificates, or to be charged as liens against their certificates, and also fixing the bimonthly installments to be paid thereon by the insured; and finally, on January 2, 1902, the defendant company notified Gray that the amount of such single premium on his certificate was $698.98 for each $1,000, or $2,096.64 on the $3,000 certificate as scaled down; and that the amount of bimonthly installments to be paid by him on account of that fixed single premium was $14.10. To this he made no objection, but complied with its requirement, and made the bimonthly payments regularly, beginning February 10, 1902, and continuing until May 17, 1906, when his certificate matured. His contention now is that the by-law (section 6 of article 10), and the proceedings taken thereunder, fixing the single premium and charging the same as a lien against his certificate, were unauthorized and void.

A lengthy argument is made in support of this contention, but we find it unnecessary to consider its merits. The case is solvable on simpler grounds. No advantage appears to have been taken of Gray by any one. Notwithstanding the reinsuring company had no power to do new business on the assessment plan, it seems to have made provision by which the rights of members of the reinsured company, who continued to hold assessment certificates, should be respected, if they concluded not to accept new certificates. It provided, in substance, that all money received by the reinsuring company, constituting the mortuary fund of the reinsured company, and all money thereafter to be collected from members of the old company for account of such a fund, should be set aside and used to pay death, disability, or maturing claims, until they should be all paid, settled, or discharged in full; but with a view of bringing about a novation of the old contracts, which obviously was the general purpose of the reinsuring contract, it devised a scheme for doing it. Few assessment certificates only of those which had originally been issued by the old company had not been converted into stipulated premium policies before the reinsuring contract was made. To secure an adjustment of them to the new business methods of the reinsuring company it devised a scheme providing for a fixed premium for the entire term of the certificate and payment of the same in cash by bimonthly installments, or to make the payment thereof a charge against the policy at its maturity, and submitted this scheme as a proposition to the members of the reinsured company for their consideration, acceptance, or rejection. Without hesitation, so far as this record discloses, and presumably with full knowledge of the provision made for him in the event he concluded not to accept the proposition, and with like full knowledge of the remedies available to him for the breach of his contract, Gray elected to accept and did accept the terms offered to him by the new company. He entered upon the performance and continued in the performance of the terms agreed upon for a period of 4½ years, until his certificate matured. This amounted to a novation, a new contract voluntarily entered into by Gray, and he cannot now repudiate it. His election was final and conclusive. Iversen v. Minnesota Mut. Life Ins. Co.

(C. C.) 137 Fed. 268; Supreme Council A. L. H. v. Lippincott, 134 Fed. 824, 67 C. C. A. 650, 69 L. R. A. 803; Davitt v. National Life Ass'n, 36 App. Div. 632, 56 N. Y. Supp. 839.

We have carefully examined and considered the case of Smith v. Northwestern Nat. Life Ins. Co. of Minneapolis, Minn., 123 Wis. 586, 102 N. W. 57, in which the reinsuring contract involved in this case was considered by the Supreme Court of Wisconsin, but it affords us no aid. The proof must have been different from that before us. The court there said:

"In this instance the consolidation agreement expressly assumes all the liabilities of the Madison company, subject only to the articles and by-laws of the defendant; but no such articles or by-laws were offered in evidence, except a statute of Minnesota which, perhaps, enters into them, and which provides that in case of consolidation the new company shall be liable for the payment of all obligations of the consolidated companies. Hence there is no proof to limit the complete assumption by defendant of the Madison company's liability to plaintiff. Any such question is, however, foreclosed by the finding of fact that such assumption was made, since defendant reserved no exception thereto."

With such a record the conclusion in that case was inevitable.

Gray originally had a certificate of membership in the old assessment company, depending for its value upon changeable and uncertain facts. An assessment company, unlike an old line company, organized on the stipulated premium plan, does not agree to pay a definite sum on the occasion of the death of a member or maturity of his certificate, but only to make an assessment of a certain amount upon all the members and to pay the beneficiary a certain percentage of that aggregate sum. As membership diminishes necessarily the amount to be realized by an assessment diminishes accordingly, and the cost of insurance secured increases correspondingly. With the loss of members in the old Wisconsin company, occasioned by the abandonment of its assessment feature and adoption of the old line stipulated premium feature, Gray's certificate became comparatively of small value. Only 74 of the old assessment members actually remained at the time the reinsurance contract was entered into. Under no theory advanced by learned counsel for Gray would he have been entitled, apart from the provisions of the contract of reinsurance, to any such sum as $4,000, or $3,157 as allowed by the trial court. In the letter of defendant's president to Gray of date January 2, 1902, the value of his policy was stated to be $414.60. Whatever its value may have been, the fact was (and it doubtless was well known to Gray) that his rights under the old assessment certificate were small and uncertain. Accordingly, when the defendant company offered him a policy of $3,000 maturing in 1906, subject to a lien of $2,096.94 for a single premium, representing the cost of insurance for one of Gray's attained age of 68 years for the period of four years, or a policy of $4,000 subject to a like lien of $2,795.92, as an inducement for him to reinsure with it, it certainly made no unfair proposition. It practically offered to him approximately $1,000 for what was then not considered of half that value. Moreover, it offered him what, according to the facts stipulated to be true in this case, was insurance at the usual and accepted cost thereof.

Treating the certificate in suit to be for $4,000 according to the concession of counsel for the defendant company, the single premium to carry that amount of insurance until the maturity of the certificate in May, 1906, was $698.98 per $1,000, or a total of $2,795.92. Gray paid between 1902 and 1906 in bimonthly installments a total sum of $408.92. Charging him with interest on the amount of the single premium, and crediting him with the payments made and interest thereon, a net balance of $2,997.77 is found to have been due the defendant company, at the time the certificate matured, as unpaid premium thereon. This amount, therefore, being deducted from the face of the certificate, leaves a net balance due Gray of $1,002.23. This, with interest from May 17, 1906, to the date of judgment in the court below, April 18, 1907, makes the total sum of $1,057.35 which the plaintiff was entitled to recover, instead of $3,157, for which judgment was rendered. In other words, plaintiff was allowed to recover $2,099.65 too much.

Our conclusion, therefore, is that the judgment must be reversed unless within 40 days after the filing of this opinion the plaintiff files in the clerk's office of the court below a remittitur of $2,099.65, and within 10 days thereafter files with the clerk of this court a certified copy of the record showing the filing of such remittitur. If such remittitur and certified copy thereof be filed, a judgment will then be entered affirming the judgment below to the extent of $1,057.35. If such remittitur and certified copy be not filed within the times aforesaid, the judgment will be reversed, with directions to grant a new trial.