LILLIE P. GARRETSON, Appellant, v. WESTERN LIFE INDEMNITY Co., Appellee.

INSURANCE: Life Insurance—Reinsurance—Reciprocal Rights and
1    Liability. General rule of law recognized that a reinsurer is only liable on *his* contract of reinsurance; that the assured may *reject* the offered reinsurance and sue on his original contract; or that he (the assured) may *accept* the reinsurance, and that, by accepting and paying premiums to the reinsurer, he cannot recover of such reinsurer on the original policy, unless his contract or necessary implication permits him to do so.

INSURANCE: Life Insurance—Insurance and Reinsurance—State
2    Laws Governing. The laws of Indiana, under which a policy of insurance is issued, do not follow and become a part of a policy issued by an Illinois company, which reinsures a Pennsylvania policy, executed in lieu of the original Indiana policy; and especially so when the Pennsylvania policy was not a reinsurance of the original Indiana policy, but was a new and different policy.

INSURANCE: Life Insurance—Reinsurance—State Laws Governing.
3    The laws of the state governing an *original* contract of insurance do not necessarily follow and become a part of subsequent contracts of *reinsurance*.

   PRINCIPLE APPLIED: An assured received a policy of life insurance issued under the laws of Indiana, which laws provide, in substance, that the liability of a reinsurer of such a policy shall be the same as though the reinsurer had issued the policy which is reinsured. The policy in question was reinsured by a company organized under the laws of Illinois. This latter company passed into receivership, and defendant, also an Illinois company, with

the approval of the Illinois insurance authorities and the court, contracted with the insolvent company to reinsure, and did reinsure, *in a limited way*, the obligations of the defunct Illinois company. *Held,* the laws of Indiana did not follow and become a part of defendant's contract of reinsurance.

**INSURANCE:** Life Insurance—Reinsurance—Liability—Evidence. Evidence reviewed, and *held* insufficient to show defendant's liability on contracts of reinsurance in excess of the limited liability pleaded.

**INSURANCE:** Life Insurance—Reinsurance—Estoppel to Deny Liability—Evidence. Evidence reviewed, and *held,* in an action on contracts of reinsurance, insufficient to estop defendant from insisting on the limited liability provided in the contract.

**ACTIONS:** Transfer on Calendar—Motion—Timeliness. Motions to transfer from law to equity should be timely.

PRINCIPLE APPLIED: Plaintiff sought to recover at law on policies of insurance. At the close of the second trial, and after both parties had rested, and after three attempts had been made to so amend the petition as to state a cause of action at law for the same alleged fraud, and after defendant's motion to direct a verdict in his favor had been argued, plaintiff, without dismissing his action at law, filed a motion to transfer the action to equity for reformation of the contract because of mistake induced by fraud. *Held,* motion properly overruled.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

TUESDAY, APRIL 4, 1916.

ACTION at law upon contracts of reinsurance made by defendant company with the United States Life Endowment Company and the Life Insurance Company of Pennsylvania, whereby it is claimed defendant company reinsured one William C. Garretson on two original policies in the sum of $4,000 each, issued by the Old Wayne Mutual Life Association, of Indiana, to the said Garretson, in which plaintiff herein was made the beneficiary. The death of the insured and the making of proper proofs of death were alleged and are practically admitted; but defendant claimed a limited liability to the assured or his beneficiary under the terms of its reinsurance contracts, and also pleaded that one of the policies

was forfeited for non-payment of dues. A jury was called·and, at the conclusion of the testimony, the trial court directed a verdict for plaintiff in the sum of $308.37 on the two policies. Before the direction was given to the jury, plaintiff moved to transfer the case to equity, and tendered a substituted petition in equity, asking, in effect, for the construction of the various reinsurance contracts appearing in the record, and for a reformation thereof to comply with the understanding of the parties. This motion was overruled. Thereafter, plaintiff filed a motion for a new trial, based on various grounds, and also for judgment against defendant for the full amount of the two policies. This motion was overruled, and judgment was entered upon the directed verdict, and plaintiff appeals.

*I. H. Tomlinson* and *Jas. A. Merritt,* for appellant.

*Coffin & Hippee* and *Thomas J. Graydon,* for appellee.

*Per Curiam.*—I. The record is long, and the facts complicated by reason of the number of reinsurance contracts intervening between the issuance of the original policies to the insured and the final contracts entered into by the defendant with its immediate reinsurers; and we shall have some difficulty in making a clear and accurate statement of even the undisputed facts.

Garretson took out his original policies in the year 1893, in what was known as the Old Wayne Mutual Life Association, of Indianapolis, Indiana. They were each for a sum of not to exceed $4,000, and the premium was $25.00 in cash upon the issuance of the policies, and assessments were at the rate of $4.00 each, limited to not exceeding one for any one month. The policies differ somewhat in their phraseology and in the amount and number of assessments to be paid; but they are each what is known in the law as assessment policies.

As we understand it, the Old Wayne Company became financially involved and, in the year 1904, it reinsured all its business in the Indiana Mutual Life Insurance Company.

This latter company in turn, in the year 1907, reinsured in the Marquette Insurance Company, and the latter company, in the same year, reinsured with the Federal Mutual Endowment Company. The Federal Mutual Company reinsured in the United States Life Endowment Company, and the latter company, in the year 1910, reinsured in the defendant company. This, as we understand it, is the history of one of the policies upon which this action is based. The other policy issued by the Old Wayne Company was, in the year 1904, reinsured by the Western Life Insurance Company of Chicago, Illinois; and in the same year, the Western Company reinsured in the Life Insurance Company of Pennsylvania. In the year 1905, the Knights Templar and Masons Life Indemnity Company, of Chicago, which is the defendant in this case, at that time doing business under the name just stated, took over the entire membership of the Pennsylvania Company under a written contract between the two companies, whereby it is claimed that defendant undertook to carry out all the terms of the original policy issued by the Old Wayne Company under the same terms and conditions. Riders to be attached to the policies were issued from time to time and sent to Garretson by the several reinsuring companies, and some controversy arises at this point as to his acceptance of some of them. For the purpose of the case, it is admitted that Garretson paid to the proper companies the assessments and premiums called for by the original policies, down until the time of his death. Defendant insists that it is bound only by the terms of its reinsurance contracts, and that it never at any time agreed to perform the original contracts unconditionally. As to the first policy, it pleaded that, while the United States Life Endowment Company was responsible under its contract of reinsurance, it became insolvent, and, with the approval of the state insurance superintendent of the state of Illinois, and a circuit court of that state, the affairs of the United States Company being then in the hands of a receiver, defendant company entered into a contract whereby it undertook

to reinsure the policy holders of the United States Company, upon certain terms and conditions which limited its liability to the amount found due by the district court in this case. As to the second policy, the defendant claims that it simply undertook to perform an agreement made by the Pennsylvania Company under its No.. 47821, whereby it (the Pennsylvania Company) issued to Garretson its policy to replace the one issued by the Old Wayne Company, its number being 7442, and that, by the terms of the Pennsylvania policy, that company agreed, upon the death of Garretson, to pay to his beneficiary:

"Such sum (not to exceed the principal amount named in said policy hereby replaced) as the said advance premium hereinabove provided will purchase for the present attained age of the insured, computed upon the company's Schedule of Premium Rates, printed on the back hereof, and which is hereby made a part of this contract."

This policy also provides:

"That the provisions and conditions written or printed by the Company on the following page or pages of this contract, are a part of this contract as fully as if they were recited at length over the signature hereto affixed."

The defendant company, under the name of the Knights Templar Company, agreed in its contract with the Pennsylvania Company as follows:

"This certifies that the amount which may be payable at the death of the insured under and by virtue of a certain Policy No. 47821 upon the life of W. C. Garretson, issued or assumed by the Life Insurance Company of Pennsylvania, will be assumed by the Knights Templar and Masons Life Indemnity Company."

This is the only contract it made with the Pennsylvania Company. According to the record, if there were nothing

more than these two contracts of the Pennsylvania Company
and. the defendant, under the name of the Knights Templar
Company, the trial court was right in fixing defendant's lia-
bility under these contracts at $128.90.

The general rule as to reinsurance contracts is that the
reinsurer is to be held liable either under its reinsurance con-
tract or upon a subsequent agreement made between it and the

1. INSURANCE:
life insurance:
reinsurance:
reciprocal
rights and lia-
bility.

assured, and the assured has the right to
accept the reinsurance offered him, or to sue
the original company for damages. If he
accepts the reinsurance contract, and pays
premiums to the reinsurance company, he is
bound by the terms of the reinsurance contract, and cannot
recover of the reinsuring company on the old policy unless
the reinsurance contract, in terms, or by necessary implication,
contains an agreement to assume, or be responsible on, the
policy reinsured. *Spande v. Western Life Indemnity Co.*
(Ore.), 117 Pac. 973 (122 Pac. 38, 39); *Epworth League v.
Olney* (Mich.), 98 N. W. 860; *Northwestern National Life v.
Gray,* 161 Fed. 488, and cases cited; *Glen v. Hope Mutual Ins.
Co.,* 56 N. Y. 379; *Fischer v. Hope Mutual Ins. Co.,* 69 N. Y.
161; *Lovell v. St. Louis Mutual Life Ins. Co.,* 111 U. S. 264
(4 Sup. Ct. Rep. 390; 28 L. Ed. 423.)

Conscious of this general rule, appellant seeks to avoid it
on several grounds. In the first place, it is claimed that, as the
original policies were Indiana contracts, they and all subse-

2. INSURANCE:
life insurance:
insurance and
reinsurance:
state laws gov-
erning.

quent contracts of reinsurance are governed
by the laws of that state; and that as, by a
statute of that state, it is provided that every
reinsurance contract shall be as binding .upon
the company making the same, and its lia-
bility to the person injured shall be the same, as if the original
policies had been issued by such company, defendant is bound
to the same extent as if it had issued the Old Wayne policies.

· The difficulty with this contention as to the second of the
policies is that, as we have already pointed. out, the defendant

never did either directly or indirectly reinsure the Old Wayne policy. In lieu of that policy, Garretson, the insured, accepted a new policy from the Pennsylvania Company, was reinstated as a policy holder in such company after having defaulted in the payment of his premiums and continued to pay his premiums either to the Pennsylvania Company or the defendant, down until the time of his death. The defendant did not reinsure any other policy than the one issued by the Pennsylvania Company to the assured; and, under the proofs, there can be no recovery except under this contract of reinsurance, which did not purport to assume any other liability than that of the Pennsylvania Company on the policy described in the contract of reinsurance.

As to the first policy, the defendant became liable, if at all, by reason of the reinsurance contract with the United States Endowment Company, both of which were Illinois companies, approved by the state insurance commissioner and the circuit court having under its control the receiver of the latter company; and the validity of that contract which plaintiff must rely upon in order to entitle her to recover must be determined by the law of the state where her contract was made. There were at least two intervening reinsurance contracts, one of which was by an Indiana company; but plaintiff is not relying upon any of these as a ground for recovery against the defendant, save as we shall hereinafter state.

**3. INSURANCE: life insurance: reinsurance: state laws governing.**

It is quite apparent that the validity of the contract between the United States Company and this defendant, which the assured or his beneficiary has accepted, must be determined either by the law of the state where it was made, or by the law of this state, where it was accepted by the assured, or the plaintiff, as beneficiary under the policy. *In re Breitung's Estate* (Wis.), 46 N. W. 891; *Born v. Home Ins. Co.*, 120 Iowa 299; *Hartford Ins. Co. v. Lasher* (Vt.), 29 Atl. 629; *North Hampton Co. v. Tuttle*, 40 N. J. L. 476.

Defendant, then, must be held liable on its own contracts, and not upon the contract of other companies, save as those contracts were recognized and assumed by it, and not upon the statute of the state of Indiana with reference to the validity of reinsurance contracts made in that state. Defendant did not contract with an Indiana company, and its contracts, whatever they are, were entered into in Illinois, Pennsylvania or Iowa, in none of which states is there any statute regarding the validity of reinsurance contracts. By the terms of those contracts, which are made up of a so-called rider and the reinsurance agreement itself, the defendant obligated itself as follows:

4. INSURANCE: life insurance: reinsurance: liability: evidence.

"THIS CERTIFIES, That all the covenants and obligations heretofore imposed and undertaken by the UNITED STATES LIFE ENDOWMENT COMPANY, under and by virtue of a certain policy rider No. 23603, issued or assumed by said UNITED STATES LIFE ENDOWMENT COMPANY, on the life of William C. Garretson, are hereby assumed by the WESTERN LIFE INDEMNITY COMPANY to the extent and in the manner as set forth in a certain contract of reinsurance made and entered into by and between the UNITED STATES LIFE ENDOWMENT COMPANY of Chicago, Illinois, and the WESTERN LIFE INDEMNITY COMPANY of Chicago, Illinois, on the 4th day of June, A. D. 1910, which said contract has been approved by the insurance superintendent of the state of Illinois, as provided by law.

"Executed and delivered at the HOME OFFICE of the WESTERN LIFE INDEMNITY COMPANY, in Chicago, Illinois, this 26th day of August, 1910."

This was the form of the so-called rider. The reinsurance contract itself provides that:

"The said WESTERN COMPANY, in consideration of the mutual acceptance and performance by the parties hereto of the covenants and agreements hereinafter recited, do hereby reinsure and accept as its members, upon the terms and to the

extent as hereinafter provided, all the living benefit members
of the said United States Company  .  .,  . ; and whose mem-
bership in said United States Company is in good standing on
the date this agreement becomes effective by the approval of
the insurance superintendent of the state of Illinois, and who
shall accept and assent to this contract in the manner herein-
after provided  .  .  .  As to each and every such member
of said Western Company will and does hereby assume liability
from and after twelve o'clock noon of the day this agreement
goes into effect under his or her policy in said United States
Company, in accordance with the following conditions, namely:

"Said members individually shall at their option continue
paying to said Western Company the same premium amounts
for the same period of insurance and at the same times as
heretofore paid to said United States Company, and be there-
after insured against death in said Western Company for
such an amount of insurance or indemnity, not exceeding the
sum provided to be paid by the terms of the policy in the
United States Company held by said members respectively,
and such an amount only, as the premiums paid by each of
said members to said Western Company will purchase, com-
puted according to the tables of rates attached to this con-
tract marked Exhibit 'A,' and applicable to the attained age
respectively of the member so paying at nearest birthday on
the day this agreement goes into effect, which insurance or
indemnity shall be payable in the way and manner provided
by the WHOLE LIFE POLICY of the said Western Company, to
which, in the present practice and course of business of the
said Western Company, the said table of rates applies; and at
any time hereafter upon making written application therefor,
any of said members shall receive, provided the said mem-
ber's policy reinsured hereunder is then in force, and upon
surrender of such existing policy, free of expense and with-
out further medical examination, the WHOLE LIFE POLICY of
the said Western Company, to which said table of rates applies
written for the amount of insurance so purchased, which net

amount of insurance or indemnity shall be plainly expressed in words and figures in the face of the policy and be subject to no lien or deduction other than for the payment of the regular premiums as the same may become due by the terms of the new policy. . . . This agreement is made by and between said Western Company and the said United States Company in behalf of all the benefit members of the said United States Company reinsured hereunder, and one payment to said Western Company for the maintenance of his or her policy under the provisions of this agreement by any present policy holders in said United States Company shall be regarded as conclusive evidence of said member's individual acceptance of and assent to this agreement, except those members who avail themselves of the rights and privileges provided for in paragraph 245 of Chapter 73 of Hurd's Revised Statutes of Illinois, special reference being made to the Edition of 1908.''

The table attached to this contract as Exhibit ''A'' reads as follows:

"PREMIUMS FOR $1,000 OF WHOLE LIFE INSURANCE PAYABLE.

| Age | Annual | Semi-Annual | Quarterly | Monthly | Age |
|---|---|---|---|---|---|
| 65 | $ 78.85 | $41.00 | $20.90 | $ 7.10 | 65 |
| 66 | 83.24 | 43.28 | 22.06 | 7.49 | 66 |
| 67 | 87.91 | 45.71 | 23.30 | 7.91 | 67 |
| 68 | 92.89 | 48.30 | 24.62 | 8.36 | 68 |
| 69 | 98.20 | 51.06 | 26.02 | 8.84 | 69 |
| 70 | 104.54 | 54.36 | 27.70 | 9.41 | 70 |
| 71 | 111.13 | 57.79 | 29.45 | 10.00 | 71 |
| 72 | 118.21 | 61.47 | 31.33 | 10.64 | 72 |
| 73 | 125.85 | 65.44 | 33.25 | 11.33 | 73 |
| 74 | 134.14 | 69.75 | 35.55 | 12.07 | 74 |
| 75 | 143.19 | 74.46 | 37.95 | 12.89 | 75 |
| 76 | 153.14 | 79.63 | 40.58 | 13.78 | 76 |
| 77 | 164.12 | 85.34 | 43.48 | 14.77 | 77 |
| 78 | 176.30 | 91.68 | 46.72 | 15.87 | 78 |
| 79 | 189.87 | 98.73 | 50.32 | 17.09 | 79'' |

The only showing as to the contract of the United States Company appears in the following certificate:

"No. 23603                                            Premium 8.00
· "Incorporated under the laws of the State of Illinois.

"UNITED STATES LIFE ENDOWMENT COMPANY, OF
CHICAGO, ILLINOIS.

"THIS CERTIFICATE is issued to William C. Garretson to be attached to CERTIFICATE or POLICY NO. 15446 of the Federal Mutual Endowment Life Insurance Company, of Chicago, Illinois, subject to all the provisions of the contract of reinsurance between the FEDERAL MUTUAL ENDOWMENT LIFE INSURANCE COMPANY, AND THE UNITED STATES LIFE ENDOWMENT COMPANY dated November 24th, 1908, which it is hereby agreed constitutes a policy of insurance in and that the holder of this certificate becomes a member of the said UNITED STATES LIFE ENDOWMENT COMPANY, and the said UNITED STATES LIFE ENDOWMENT COMPANY DOES HEREBY assume the foregoing certificate or policy of the said FEDERAL MUTUAL ENDOWMENT LIFE INSURANCE COMPANY, in accordance with the terms and conditions of the said reinsurance contract, and the holder of this certificate hereby agrees to all of the terms and conditions of the said reinsurance contract. The said UNITED STATES LIFE ENDOWMENT COMPANY agrees to carry said certificate or policy hereby assumed, provided all premiums required to maintain in force such policy or certificate shall be paid to the UNITED STATES LIFE ENDOWMENT COMPANY, as provided in the said original policy or certificate, and by the said reinsurance contract.

"No change of policy or certificate other than the attachment of this RIDER or REINSURANCE POLICY to the original certificate shall be necessary in order to bind the UNITED STATES LIFE ENDOWMENT COMPANY to the payment of the policy of which it shall become a part, or to bind the insured hereunder to the contract with the UNITED STATES LIFE ENDOWMENT COM-

PANY the same as if the original policy had been issued by the reinsuring COMPANY.

"IN WITNESS WHEREOF, the said UNITED STATES LIFE ENDOWMENT COMPANY has caused these presents to be signed by its PRESIDENT and SECRETARY, at the CITY OF CHICAGO, ILLINOIS, this 24th day of November, A. D. 1908."

The terms of the reinsurance contract therein referred to are not found in the record. The only showing as to the Federal Mutual contract is as follows:

"FEDERAL MUTUAL ENDOWMENT LIFE INS. CO.,
OF CHICAGO, Illinois. 2210.
"2214  APPLICATION FOR REINSURANCE.  15446.

"WHEREAS, Policy No. 7442 issued to me by the Indiana Mutual Life Insurance Company, of Indiana, is null and void, and desiring insurance with and to have said policy reinstated in the FEDERAL MUTUAL LIFE INSURANCE COMPANY, of Chicago, Ill., in accordance with and subject to all the provisions and conditions of the contract of reinsurance between said company and myself, now, therefore, as a consideration and basis for reinsurance and transfer in and to said FEDERAL MUTUAL ENDOWMENT LIFE INSURANCE COMPANY, I, Wm. C. Garretson, of Des Moines, state of Iowa, do herewith enclose $8.00 to be applied on my premium payment, and I do hereby warrant and declare that I am now in sound health and free from disease; that there is now existing no condition of person or occupation tending to impair my health, injure my constitution or shorten my life, and that I have not been sick or required the services of a physician since making my application for insurance on my life to said Indiana Mutual Life Insurance Company, except as follows:

"Name of disease, Old age only; severity, usual health; and I do also warrant that the answers written to the questions

in the original application, upon which said policy was issued by said company, were full, complete, correct and true, and are equally true today in every respect, except as to the natural increase in my age, and I hereby agree that these statements shall be equally as binding as those contained in my original application, it being understood that this reinsurance shall not take effect until the above mentioned premium payment is actually made to and received and accepted by the FEDERAL MUTUAL ENDOWMENT LIFE INSURANCE COMPANY; and it is further understood that, should it appear or be proven that this warranty is false and untrue, or should any premium on said policy hereafter remain unpaid beyond the date upon which it falls due, then said policy shall be null and void, and all payments thereon forfeited to the Company.

"Dated at Des Moines, this 27th day of August, 1907. WILLIAM C. GARRETSON, Insured.

"I, beneficiary under the above mentioned policy, do hereby agree that any and all rights I may, can or shall have by reason of the reinstatement of said policy upon the foregoing application, shall in all respects be subject to, and governed by, the terms, conditions, restrictions and warranties as in said application set forth. LILLIE P. GARRETSON, Beneficiary.

"August 27th, 1907.

"Approved this 27th day of August, Aug. 30, 1907. R. S. Kirkpatrick, Medical Director.

"Joseph M. Blake, M. D.

"Note: To insure acceptance, all blank spaces must be filled."

"TO THE MEMBERS OF THE FEDERAL MUTUAL ENDOWMENT LIFE INSURANCE COMPANY.

"GREETING:—

"Pursuant to formal notice, at a meeting of your members, held at the general offices of your company, November 24, 1908, a consolidation and reinsurance agreement was

approved without a dissenting voice.  This consolidation makes our company the largest mutual endowment life company in the United States.  We welcome you as one of our members and believe our relationship will prove mutually profitable and agreeable.  There will be no change in the amount of the policy held by you and assumed by this company or of the amount of premiums you are to pay.  Your policy was assumed by this company at 2 o'clock P. M., November 24, 1908.  Attach the enclosed rider thereto and hereafter remit your premiums direct to this office, payable to the order of the United States Life Endowment Company.  We also enclose a copy of the reinsurance contract and a statement of the last audit of the Company.

    ''Fraternally and sincerely yours,

''UNITED STATES LIFE ENDOWMENT COMPANY.

''R. E. Mabry, Sec'y.

    ''P. S.  The above statement is correct and the transfer has met with unanimous endorsement of the officers and ·directors of the Federal Company, as well as that of its policy holders.  All are pleased that the transfer of risks has been made to a company that is able to show its liability to care for all its members to such marked advantage.

    ''Very truly yours,

''FEDERAL MUTUAL ENDOWMENT LIFE INSURANCE COMPANY.

''George O. Nesbit, Sec'y.''

The reinsurance contract of the Marquette Mutual Company undertook to limit its liability, and gave to the assured an option to take a new policy on new rates, or to continue paying under his old policy with a limited liability on the part of the Marquette Company.  We do not set out this agreement in full, as it would serve no useful purpose.·

As to the second policy, it is claimed by defendant that the assured exercised an option given him by the Life Insurance Company of Pennsylvania, and accepted a policy in this

latter company bearing its number 47821, which reads as follows:

"Number 47821.

"The LIFE INSURANCE COMPANY

OF

PENNSYLVANIA

"THIS CONTRACT OF INSURANCE is made by the Life Insurance Company of Pennsylvania, to replace Policy Number 7442 for four thousand dollars, issued by the Old Wayne Mutual Life Association of Indianapolis, Indiana.

"In consideration of the payment of four dollars on or before 5 o'clock P. M. of the first day of each month after the date hereof in every year during the continuance of .this contract, the company agrees to pay to Lillie P. Garretson, if living, otherwise to the insured's executors, administrators or assigns, or such other beneficiaries as may be designated by the insured, and hereinafter provided, at the home office of the company, in the city of Philadelphia, state of Pennsylvania, within ninety days after receipt and approval of proofs satisfactory to the company of the fact and the cause of death of W. C. Garretson, of Knoxville, in county of ........ in the state of Iowa, herein called the insured, and a valid claim hereunder, such sum (not to exceed the principal amount named in said policy hereby replaced) as the said advance premium hereinabove provided will purchase for the present attained age of the insured, computed upon the company's schedule of premium rates, printed on the back hereof, and which is hereby made a part of this contract. The privileges and conditions written or printed by the company, on the following page or pages of this contract, are a part of this contract as fully as if they were recited at length over the signature hereto affixed.

"In witness whereof, the Life Insurance Company of Pennsylvania has, this 1st day of October, 1904, by its duly authorized officers, executed this contract at its home office in the city of Philadelphia, state of Pennsylvania; but the same shall not be binding until it is delivered to said insured during

his lifetime, and good health, nor until the first payment herein required has been received and accepted by the company.

"S. B. Blessoe, Assistant Secretary.

"F. S. Campbell, President.

"PRIVILEGES AND CONDITIONS.

"The premiums on this contract for the first year are for preliminary term insurance and are applicable in full to the payment of mortuary or expense obligations of the company. Beginning with the second year of this contract in force 70 per centum of the premium shall constitute the net mortuary premium of the company hereon, and this contract shall be treated and construed. as a whole life contract issued as of the then age of the insured and the reserve according to the Actuaries' Table of Mortality, and four per centum interest may be maintained by the company upon this contract, for which purpose the mortuary element of the premium hereon may be varied according to the mortality experience of the company. The company is not required by law to maintain the reserve which is required of other life insurance companies. The privileges of dividends provided for by this contract shall be available only when the reserve funds of the company are in excess of the amount required by law, and not less than $100,000. . . . Seventh. The insured hereunder may continue to pay as premium on this contract the amount specified in the face hereof, or, within thirty days from date hereof, the insured may elect to pay an additional premium hereon sufficient (according to the company's premium rates printed elsewhere in this contract) to make the amount of insurance effective hereunder equal to the amount expressed in the original policy, hereby replaced. After thirty days from the date hereof, the insured may make such election, provided he shall first furnish the company satisfactory evidence of good health and pay to the company an amount equal to the unpaid balance of such required premium from the date hereof, with interest at the rate of five

per centum per annum.   .  .  .   The policy described as
replaced on the face of this contract is hereby cancelled, and no
liability thereunder on the part of this company shall exist.

Schedule of Annual and Monthly Installment Premiums Re-
ferred To In This Contract for Each $100.00 Insur-
ance.   Payable According To the Present
Attained Age of the Insured.

| Age. | Annual Premiums | Monthly Installment Premiums |
|---|---|---|
| 65 | $11.21 | $1.02 |
| 66 | 11.83 | 1.08 |
| 67 | 12.49 | 1.14 |
| 68 | 13.19 | 1.20 |
| 69 | 13.94 | 1.27 |
| 70 | 14.73 | 1.34 |
| 71 | 15.64 | 1.43 |
| 72 | 16.74 | 1.53 |
| 73 | 18.03 | 1.64 |
| 74 | 19.32 | 1.76 |
| 75 | 20.67 | 1.88 |

"Note:  All persons under age 21 will be required to pay
the rate of that age."

This is the policy or the contract which the defendant
claims it assumed by its contract with the Pennsylvania Com-
pany, and defendant admits the issuance of this certificate or
rider to the assured:

"KNIGHTS TEMPLARS AND MASONS LIFE INDEMNITY COMPANY,
Chicago, Illinois.
"This certifies that the amount which may be payable at
the death of the insured, under and by virtue of a certain
Policy No. 47821, upon the life of W. C. Garretson, issued or
assumed by the Life Insurance Company of Pennsylvania,

will be assumed by the Knights Templars and Masons Life Indemnity Company, when a premium payment shall have been made on said policy to said Knight Templars and Mason Life Indemnity Company, and said premium shall have been duly acknowledged by a receipt signed by the General Manager of said Knights Templars and Masons Life Indemnity Company.

"Executed at the home office of the company at Chicago, Illinois, this 7th day of March, 1905. E. I. Rosenfeld, General Manager."

The assured failed to pay one of the premiums, or assessments, in time, and he made an application to the defendant for a renewal of his policy, from which we extract the following:.

"Policy No. 47821. Payment herein, $4.00. Approved
7-13-'05.

REVIVAL APPLICATION.

"I am the insured under Policy No. 47821 in the Western Life Indemnity Company, and I concede that, owing to default of payment on my part, said policy is now forfeited and of no force or effect, and I hereby apply to said company for the revival of said policy at the present rates, and in event that this application is granted by said company, and as a consideration therefor, I agree to make all payments upon said policy in conformity with its terms, and I agree that said policy shall be subject to the full operation of all its provisions and conditions, the same as though it were a new policy issued at the date upon which revival under this application may be granted, without medical examination. I expressly agree that the original application for said policy shall be effective and binding under the contract of insurance between myself and said company, the same as if made to said company at this date."

Plaintiff admits the making and issuance of these various documents, but denies the acceptance thereof, and bases her

claims upon the original contracts made by the Life Insurance Company of Pennsylvania with its immediate reinsurer, the Western Union Life Insurance Company, a rider issued by this latter company, and also a rider issued by the defendant company, which it is claimed was attached to the original Wayne policy. She admits the receipt of the papers last above quoted, by her husband before his death, but claims they were not attached to his policy; that he did not know the terms thereof and did not assent thereto; and that this suit is not founded thereon. This raises a square fact issue.

By the original agreement between the Life Insurance Company of Pennsylvania and the Western Union Life Company, of Illinois, the Life Insurance Company of Pennsylvania assumed the same liability to the policy holders of the Western Union Company as the latter company owed to its policy holders; but this latter company did not agree absolutely to pay the amount called for in the policy issued by the Old Wayne Company to the assured, Garretson. We shall not set out the contract between the Old Wayne Co. and the Western Union Life Co., as it would only encumber the record. The Life Insurance Company of Pennsylvania did not issue any policy or rider in which it undertook to pay the Old Wayne policy, but did issue the following:

"Attach this agreement to your WESTERN UNION LIFE INSURANCE COMPANY POLICY.

"LIFE INSURANCE COMPANY OF PENNSYLVANIA,
PHILADELPHIA, PA.

"THIS CERTIFIES, That W. C. GARRETSON, holder of POLICY NO. 7442 in the WESTERN UNION LIFE INSURANCE COMPANY, has accepted the terms of the agreement endorsed hereon, by the payment of the first premium of $4.00, receipt whereof is hereby acknowledged, and the said WESTERN UNION LIFE INSURANCE COMPANY policy is hereby assumed by the life insurance company of PENNSYLVANIA, subject to its terms and the terms of said agreement.

"EXECUTED AT THE HOME OFFICE OF THE COMPANY, at PHILADELPHIA, PA., this 16th day of September, 1904.  Lester B. Bales, Sec'y.

"Endorsed on the back of Exhibit 'I' are the following words in fine print:  The contracts of the members who formerly belonged to the Old Wayne Life Insurance Company, are to be continued in force in the party of the first part, subject to the same terms and conditions as those upon which said members were transferred to the party of the second part."

The rider sent by the Knights Templar Co. to be attached has already been quoted over date of March 7th, 1905, and we find no other in the record.

It seems quite clear to us from the entire testimony that Garretson did agree with several of the companies to cancel his second Old Wayne policy, and that he accepted new policies in both the Western Union Co. and the Life Insurance Company of Pennsylvania, and that the only agreement the defendant ever made was with the Life Insurance Company of Pennsylvania to reinsure its policy holders, among whom was W. C. Garretson, the assured in this case. This is corroborated in several ways, and especially by allegations made in the original and first substituted petitions in this case, and by allegations made in a petition filed by plaintiff in the courts of Illinois. Again, after default in the payment of premiums, the defendant, in consideration of the release of its liability, expressly agreed to a revival of the policy, its No. 47821, and nothing more. This, of course, relieved it of any responsibility under the Old Wayne Company, save as the defendant undertook to assume it, and this it never did.  Having thus laboriously traced the history of the several policies and contracts, we fail to find any agreement on the part of this defendant to carry out the original policies issued to Garretson by the Old Wayne Company, according to their terms.  Indeed, as to the policy refer-

red to in the second count, there never was any agreement by the defendant to carry out the terms of that policy at all. It will be observed that the transaction with the United States Life Endowment Company was not strictly a contract of reinsurance, but really a purchase by the defendant from a receiver of the first mentioned company of its assets, which purchase contract was approved by the court appointing the receiver and by the insurance commissioner of the state of Illinois, and was the only obligation which the defendant assumed.

Realizing the force of these suggestions, plaintiff alleged in its petition that the defendant, as well as the other reinsuring companies, from time to time represented and stated to the assured and to plaintiff, as beneficiary,

5. INSURANCE: life insurance: reinsurance: estoppel to deny liability: evidence.

that the original policies would be carried out by the several reinsuring companies according to their terms, without diminution or increase of premiums, thereby inducing them to pay the premiums and to believe they had assurance to the full amount of the original policies; that the several companies treated the policies as in full force and had the benefits thereof; and that they are now estopped from denying liability thereon. There is no claim of any conspiracy among the several reinsuring companies, so that no one is to be charged with representations made by another; and the only question on this appeal is whether or not this defendant company has placed itself in such a position as to estop itself from relying on its contracts. There is no doubt that some of these reinsuring companies did considerable juggling, and some of them made rash, if not intentionally false, statements as to their liability under the terms of their respective contracts. But defendant is to be charged only by what it, or its officers, did in the premises. We have already set out what we regard as the material and relevant contracts, riders, etc., and need add only that the defendant sent out statements to the insured after it had made its reinsurance contracts, as follows:

"Chicago, February 18, 1905.

"Dear Sir:—

"Kindly attach the inclosed rider to your policy. By this agreement, this company assumes liability upon your policy upon receipt from you of your premium which will be due as shown by the inclosed premium notice. Until that date, the liability continues with the Life Insurance Company of Pennsylvania. I also inclose a copy of the last annual statement of this company, under date of December 31, 1904, and detailed statement of the assets. Please send your premium, on or before the date when due, within the inclosed envelope, and oblige.

"Very truly yours,

"E. I. ROSENFELD, General Manager."

At another time and after reinsuring the Life Insurance Company of Pennsylvania policies, it stated:

"This company has never indulged in any such practice, and the statement that this company has absorbed a great number of smaller companies and reduced the value of the policies in so doing, is without foundation in fact. This company has never 'absorbed' but one company, and that was the Life Insurance Company of Pennsylvania, a part of whose risks it took over in February of this year. It seems that the Life Insurance Company of Pennsylvania had, in past years, taken over a number of smaller companies, but with the past history of that company, this company has no concern, except so far as it specifically assumed certain risks of the Pennsylvania Company as they existed in February last, when the transfer occurred. The Western Life Indemnity Company has paid the full amount due to every previous policy holder of the Pennsylvania Company according to the terms and conditions of his policy, which terms and conditions were the full measure of the obligation assumed by the Western Life Indemnity Company when it assumed such risks."

And again it stated:

"We recognize the great financial loss which a man's family and business sustain in his death, and know the strong desire to provide against any possible want of his family, or the sacrifice of his business by his premature death. Many need protection for a few years only, during the time their families and business are wholly dependent upon them, or to bridge them over some new and unfinished enterprise. It is beyond their reach or not their wish to secure protection in 'Old Line,' 'Level Premium,' 'Legal Reserve' insurance companies while they could easily pay present actual cost for it, and protection at present actual cost is exactly what the Knights Templars and Masons Life Indemnity Company of Chicago can and does furnish.

"THIS COMPANY GUARANTEES, UNDER the laws of the state of Illinois,

"FIRST, to pay at death the full face of the policy.

"PAUSE—READ—THINK.

"The only valuable thing a man possesses that his dependent ones cannot inherit is his knowledge and experience which enable him to produce an income. This valuable possession is in danger of being lost to the family by death at any time."

And again it stated:

"To the Policy Holders of the
WESTERN LIFE INDEMNITY COMPANY.

MASONIC TEMPLE, CHICAGO.

"PAR. VII. REINSURANCE of LIFE INSURANCE COMPANY OF PENNSYLVANIA MEMBERS.

"In February of this year, your company was enabled to acquire from and through your present manager for $200,000, in one transaction, 5,600 members of the Life Insurance Company of Pennsylvania. The net income received from these members in less than eight months has already amounted

to more than $87,000, being a return of nearly 44 per cent. of the total cost, and at this rate, within about twelve months more, the entire balance of the cost will have been repaid to your company, so that thenceforth the net income from the new members will be purely profits. You may not be aware of it, but the fact is, that competition in the business of procuring life insurance has become so unusually keen, by reason of the large number of insurance companies of different kinds, and the custom of paying agents large commissions for procuring business, that the actual expense of procuring new insurance is usually regarded as amounting to from one hundred to one hundred and fifty per cent. of the first year's premium on the new business. We have no hesitancy in expressing our belief that you will fully endorse the wisdom of that transaction.''

These statements were all prior to the time that defendant made its agreement with the United States Life Endowment Company, and, of course, had no reference to the first policy sued on. The defendant's contract with that company was not made until August 26th, 1910; and of course these statements had no reference to that contract and cannot be said to have been the inducement thereof; nor can it be argued that plaintiff had a right to rely thereon, for they were made with reference entirely to the taking over of, or the reinsuring of, the policies of the Life Insurance Company of Pennsylvania. The contract with the United States Life Endowment Company was not made until something like five years thereafter. As to the second policy of the Old Wayne Company, we find that defendant never, at any time, assumed or agreed to become responsible for it. That policy was cancelled by agreement of the parties, and defendant's agreement was to pay policy No. 47821, issued by that company; and that company never agreed to pay the original Old Wayne policy, but undertook to reinsure a policy issued by the Western Union Company of Chicago. Going back now to the representations made by defendant's officers, we find that there was no misstatement

as to what this defendant had done with the policy holders in the Life Insurance Company of Pennsylvania. Again, it never made any statement anywhere as to any liability on the Old Wayne policy which it had taken over from the Life Insurance Company of Pennsylvania. Moreover, Garretson was no longer relying on his Old Wayne policy, for he had elected to hold the Western Union under the terms of its agreement until he accepted the policy of the Life Insurance Company of Pennsylvania; and thereafter he agreed, after a default in his premiums to the defendant, to accept the Life Insurance Company of Pennsylvania policy as the policy of the defendant company. Whilst the assured, Garretson, may have believed that the second of his policies had at one time been reinsured by the Life Insurance Company of Pennsylvania, he accepted a policy in that company in lieu thereof, and this policy expressly limited the liability of that company, as already stated. The defendant assumed liability under that policy, and not on the one issued by the Old Wayne Company, and no misrepresentations were made by the defendant about it. Moreover, the necessary elements to create an estoppel were not proved, and the false and fraudulent representations pleaded cannot, of themselves, be relied upon as an estoppel. They might, if proved, be sufficient ground for an action at law for damages, or be ground for rescinding the contracts and recovering back the money paid thereon, but in themselves they would not amount to an estoppel.

II.     The petition in equity, filed after the motion to direct a verdict was argued, was for reformation of the contracts because of mutual mistake, or for mistake on the part of the insured superinduced by the fraud of

6. ACTIONS:
transfer on
calendar: mo-
tion: timeli-
ness.

the defendant. It was filed after at least three attempts to amend the petition at law to make out a cause of action for the same fraud, and after a second trial of the case had progressed to the point where both parties had rested and defendant had filed a motion

for a directed verdict. Plaintiff did not then dismiss her law case without prejudice, but simply asked to have the case transferred to the equity docket, and that she be given ten days to file a new substituted petition, and that the cause be continued for that purpose and assigned for a given day at the next term of court. This motion was overruled, and, two days after the verdict was returned, plaintiff filed a motion for a new trial, accompanied by a long petition in equity. The motion for a new trial was overruled and judgment entered on the verdict.

It is manifest there was no error in any of these rulings. In fact, unless plaintiff dismissed her law case, it was the duty of the trial court to dispose of it; for no motion for a postponement was filed. Had such a motion been filed, there was no ground for it; for plaintiff was not proposing to either dismiss or to try her law case to a jury again. She simply wished to take it away from a jury at that time and to have the whole matter tried upon a new petition in equity to the court. Such procedure would have been unusual, and the trial court was surely not bound to grant the request; at best, it was a matter within the sound discretion of the court, and we see no abuse of that discretion.

We have had great difficulty in arriving at the facts, and now that we have finished, are not certain that we have covered them all. The case is unusual, and in one respect a hard one; and yet it must be remembered that none of these companies, unless it be the defendant, was upon a substantial basis. They each failed; and, but for these reinsurance contracts, Garretson would not only have lost all his premiums paid, but would have had no insurance whatever. He was paying but $12.00 annually for each thousand dollars of insurance, if plaintiff's version is correct, and it is manifest that, if all were carried at that rate, he had very temporary insurance. Many of the mutual companies and a legal reserve company could not have lasted long at that rate.

The insured was born in the year 1833 and, at the time he took out his first policy, in the year 1893, was sixty years of age. He was seventy years of age when first insured by defendant, and seventy-seven years old when defendant became responsible on its second contract. He was beyond the ordinary insurable age when he was reinsured into the defendant company. It accepted him on the basis of giving insurance for what his premium would buy, waiving the question of age. He paid the defendant company about $400, and his beneficiary receives $308.27, with interest. This may not be entirely equitable, but it seems to be in accord with defendant's contracts.

We see no reason for disturbing the judgment below, and it must be and it is *Affirmed*.

EVANS, C. J., DEEMER, WEAVER and PRESTON, JJ., concur.